1

2

3

4

5

6

7

8

9

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON

10

11

12

13

14

15

16

17

18

19

| UNITED STATES OF AMERICA, | ) | |
|---|---|---|
| Plaintiff, | ) | Case No. 3:10-cv-05899 |
| and | ) | |
| PUGET SOUND CLEAN AIR AGENCY, | ) | CONSENT DECREE BETWEEN |
| Co-Plaintiff, | ) | PLAINTIFF UNITED STATES OF AMERICA AND DEFENDANT |
| v. | ) | U.S. OIL & REFINING COMPANY |
| U.S. OIL & REFINING CO., | ) | |
| Defendant | ) | |

20

21

22

23

24

25

CONSENT DECREE BETWEEN PLAINTIFF - 1
UNITED STATES OF AMERICA AND
DEFENDANT U.S. OIL & REFINING CO.

**United States Department of Justice**
**Environment & Natural Resources Division**
**Environmental Enforcement Section**
**999 18th Street, Suite 370**
**Denver, Colorado 80202**
**(303) 844-1381**

## TABLE OF CONTENTS

I.   JURISDICTION AND VENUE ................................................................. 6

II.   APPLICABILITY AND BINDING EFFECT ................................................. 7

III.   OBJECTIVES ................................................................................... 9

IV.   DEFINITIONS ................................................................................. 9

V.   BENZENE WASTE OPERATIONS NESHAP PROGRAM ENHANCEMENTS .... 10

VI.   LEAK DETECTION AND REPAIR ("LDAR") PROGRAM ENHANCEMENTS.. 26

VII.   EMISSION CREDIT GENERATION ...................................................... 40

VIII.   SUPPLEMENTAL ENVIRONMENTAL PROJECTS ................................... 41

IX.   REPORTING AND RECORDKEEPING ................................................... 43

X.   CIVIL PENALTY ............................................................................. 44

XI.   STIPULATED PENALTIES ................................................................. 46

XII.   INTEREST ..................................................................................... 54

XIII.   RIGHT OF ENTRY .......................................................................... 54

XIV.   FORCE MAJEURE .......................................................................... 55

CONSENT DECREE BETWEEN PLAINTIFF - 2
UNITED STATES OF AMERICA AND
DEFENDANT U.S. OIL & REFINING CO.

**United States Department of Justice**
**Environment & Natural Resources Division**
**Environmental Enforcement Section**
**999 18th Street, Suite 370**
**Denver, Colorado  80202**
**(303) 844-1381**

XV.   RETENTION OF JURISDICTION/DISPUTE RESOLUTION ................................. 57

XVI.   EFFECT OF SETTLEMENT ...................................................................... 60

XVII.   GENERAL PROVISIONS.......................................................................... 62

XVIII.   TERMINATION ..................................................................................... 67

XIX.   SIGNATORIES ...................................................................................... 70

APPENDIX A – SUPPLEMENTAL ENVIRONMENTAL PROJECTS............................. 76

CONSENT DECREE BETWEEN PLAINTIFF - 3
UNITED STATES OF AMERICA AND
DEFENDANT U.S. OIL & REFINING CO.

United States Department of Justice
Environment & Natural Resources Division
Environmental Enforcement Section
999 18th Street, Suite 370
Denver, Colorado  80202
(303) 844-1381

## CONSENT DECREE

WHEREAS, Plaintiff the United States of America ("United States"), by the authority of the Attorney General of the United States and through its undersigned counsel, acting at the request and on behalf of the United States Environmental Protection Agency ("EPA"), and Co-Plaintiff the Puget Sound Clean Air Agency ("PSCAA" or "Co-Plaintiff") have simultaneously filed a Complaint against defendant U.S. Oil & Refining Co. ("U.S. Oil" or "Defendant") for certain alleged violations at its refinery located in Tacoma, Washington (the "Refinery");

WHEREAS, the United States alleges, upon information and belief, that U.S. Oil has violated and/or continues to violate the following statutory and regulatory provisions (the "Federal Requirements"):

1) Leak Detection and Repair ("LDAR") requirements promulgated pursuant to Sections 111 and 112 of the Clean Air Act ("CAA"), and found at 40 C.F.R. Part 60, Subpart GGG; and 40 C.F.R. Part 63, Subpart CC ("LDAR Regulations"); and

2) National Emission Standards for Hazardous Air Pollutants ("NESHAP") for Benzene Waste Operations promulgated pursuant to Section 112(e) of the CAA, and found at 40 C.F.R. Part 61, Subpart FF ("Benzene Waste Operations NESHAP Regulations");

3) NESHAP for Petroleum Refineries: Catalytic Reforming Units, 40 C.F.R. Part 63, Subpart UUU, promulgated pursuant to Section 112 of the CAA;

WHEREAS, the LDAR allegations in this matter involve failing to record several monitoring events and several first and final attempts at repair; failing to report four leaks in semi-annual reports; failing to equip eight open-ended lines with secondary closure devices; and failing to limit difficult-to-monitor valves to 3% or less in three process units;

CONSENT DECREE BETWEEN PLAINTIFF - 4
UNITED STATES OF AMERICA AND
DEFENDANT U.S. OIL & REFINING CO.

United States Department of Justice
Environment & Natural Resources Division
Environmental Enforcement Section
999 18th Street, Suite 370
Denver, Colorado 80202
(303) 844-1381

WHEREAS, the LDAR allegations do not include a failure to undertake Method 21 properly, the Refinery reported an overall leak rate of 0.53% and, in comparative monitoring, EPA found an overall leak rate of 0.41%;

WHEREAS, the Benzene Waste Operations NESHAP allegations in this matter involve failing to include all waste streams in the Refinery's calculation of Total Annual Benzene quantity, failing to report a range of benzene concentrations for each uncontrolled waste stream, failing to determine the annual waste quantity in all benzene-containing waste streams at the point of generation, and failing to properly collect one benzene waste sample;

WHEREAS, the Puget Sound Clean Air Agency has joined in this matter alleging violations of federal, state and PSCAA regulations and certain terms of U.S. Oil's air operating permit that implement or supplement the foregoing federal requirements (the "PSCAA Requirements");

WHEREAS, U.S. Oil denies that it has violated the Federal Requirements, and denies that it has violated the PSCAA Requirements, and maintains that it has been and remains in compliance with all applicable statutes, regulations and permits and is not liable for civil penalties and injunctive relief as alleged in the Complaint;

WHEREAS, discussions between the Parties have resulted in the settlement embodied in this Consent Decree lodged with the Court simultaneously with the filing of the Complaint;

WHEREAS, U.S. Oil has agreed to undertake four Supplemental Environmental Projects at an estimated out-of-pocket cost of approximately $746,000 including, during a 2010 turnaround, proactively replacing or repacking – without any demonstration of leaks – approximately 170 valves that are cycled frequently and/or are in high temperature or high

CONSENT DECREE BETWEEN PLAINTIFF - 5
UNITED STATES OF AMERICA AND
DEFENDANT U.S. OIL & REFINING CO.

**United States Department of Justice**
**Environment & Natural Resources Division**
**Environmental Enforcement Section**
**999 18th Street, Suite 370**
**Denver, Colorado 80202**
**(303) 844-1381**

1   pressure applications.  Of these valves, the control valves will be upgraded with "live loaded

2   packing," that is, with packing to which a spring load has been applied to the gland follower of

3   the packed valve, and the manual valves will be upgraded or enhanced with state-of-the-art

4   stuffing box packing;

5       WHEREAS, U.S. Oil has waived any applicable federal or state requirements of statutory

6   notice of the alleged violations;

7       WHEREAS, the United States agrees that U.S. Oil need not answer the Complaint;

8       WHEREAS, notwithstanding the foregoing reservations, the Parties agree that: (a)

9   settlement of the matters set forth in the Complaint is in the best interests of the Parties and the

10  public; and (b) entry of the Consent Decree without litigation is the most appropriate means of

11  resolving this matter; and

12      WHEREAS, the Parties recognize, and the Court by entering the Consent Decree finds,

13  that the Consent Decree has been negotiated at arms length and in good faith and that the

14  Consent Decree is fair, reasonable, and in the public interest;

15      NOW THEREFORE, with respect to the matters set forth in the Complaint, and in

16  Part XVI of the Consent Decree ("Effect of Settlement"), and before the taking of any testimony,

17  without adjudication of any issue of fact or law, and upon the consent and agreement of the

18  Parties to the Consent Decree, it is hereby ORDERED, ADJUDGED and DECREED as follows:

19

20          **I.   JURISDICTION AND VENUE**

21

22  1.      This Court has jurisdiction over the subject matter of this action and over the

23  Parties pursuant to 28 U.S.C. §§ 1331, 1345, and 1355.  In addition, this Court has jurisdiction

24

25

CONSENT DECREE BETWEEN PLAINTIFF - 6
UNITED STATES OF AMERICA AND
DEFENDANT U.S. OIL & REFINING CO.

**United States Department of Justice**
**Environment & Natural Resources Division**
**Environmental Enforcement Section**
**999 18th Street, Suite 370**
**Denver, Colorado  80202**
**(303) 844-1381**

over the subject matter of this action pursuant to Sections 113(b) of the CAA, 42 U.S.C.

§§ 7413(b). The United States' Complaint states a claim upon which relief may be granted for

injunctive relief and civil penalties against U.S. Oil under the CAA. Authority to bring this suit

is vested in the United States Department of Justice by 28 U.S.C. §§ 516 and 519 and Section

305 of the CAA, 42 U.S.C. § 7605.

2.   Venue is proper in the Western District of Washington pursuant to Section 113(b)

of the CAA, 42 U.S.C. § 7413(b), and 28 U.S.C. §§ 1391(b) and (c) and 1395(a). U.S. Oil

consents to the personal jurisdiction of this Court, waives any objections to venue in this District,

and does not object to the participation of PSCAA in this action.

3.   Notice of the commencement of this action has been given to the State of

Washington in accordance with Section 113(a)(1) of the CAA, 42 U.S.C. § 7413(a)(1), and as

required by Section 113(b) of the CAA, 42 U.S.C. § 7413(b).

## II.  APPLICABILITY AND BINDING EFFECT

4.   The provisions of this Consent Decree shall apply to the Refinery, and shall be

binding upon the United States, PSCAA, and U.S. Oil and its agents, successors, and assigns.

5.   U.S. Oil agrees not to contest the validity of this Consent Decree in any

subsequent proceeding to implement or enforce its terms.

6.   Effective from the Date of Entry of this Consent Decree until termination

pursuant to Part XVIII, U.S. Oil agrees that the Refinery is covered by this Consent Decree.

Effective from the Date of Entry of this Consent Decree, U.S. Oil shall give written notice of this

Consent Decree to any successors in interest in the Refinery prior to the transfer of ownership or

CONSENT DECREE BETWEEN PLAINTIFF - 7
UNITED STATES OF AMERICA AND
DEFENDANT U.S. OIL & REFINING CO.

United States Department of Justice
Environment & Natural Resources Division
Environmental Enforcement Section
999 18th Street, Suite 370
Denver, Colorado 80202
(303) 844-1381

operation of Refinery, or any portion thereof, and shall provide a copy of this Consent Decree to any successor in interest. U.S. Oil shall notify the United States and PSCAA, in accordance with the notice provisions set forth in Paragraph 153 ("Notice"), of any transfer of ownership or operation at least 30 days prior to any such transfer.

7.      U.S. Oil shall condition any transfer, in whole or in part, of ownership of, operation of, or other interest (exclusive of any non-controlling, non-operational shareholder or membership interest) in the Refinery, as applicable, upon the execution by the transferee of a modification to this Consent Decree, which makes the terms and conditions of this Consent Decree applicable to the transferee. In the event of such transfer, U.S. Oil shall notify the United States and PSCAA in accordance with the notice provisions in Paragraph 153. By no earlier than 30 days after such notice, U.S. Oil may file a motion to modify this Consent Decree with the Court to make the terms and conditions of this Consent Decree applicable to the transferee. U.S. Oil shall be released from the obligations and liabilities of this Consent Decree unless the United States or PSCAA opposes the motion and the Court finds that the transferee does not have the financial and technical ability to assume the obligations and liabilities under this Consent Decree.

8.      Except as provided in Paragraph 7, U.S. Oil shall be solely responsible for ensuring that performance of the work required under this Consent Decree is undertaken in accordance with the deadlines and requirements contained in this Consent Decree and any attachments hereto. U.S. Oil shall provide a copy of the applicable provisions of this Consent Decree to each consulting or contracting firm that is retained to perform work required under this Consent Decree upon execution of any contract relating to such work. Copies of the relevant portions of this Consent Decree do not need to be supplied to firms who are retained solely to

CONSENT DECREE BETWEEN PLAINTIFF - 8
UNITED STATES OF AMERICA AND
DEFENDANT U.S. OIL & REFINING CO.

**United States Department of Justice**
**Environment & Natural Resources Division**
**Environmental Enforcement Section**
**999 18th Street, Suite 370**
**Denver, Colorado  80202**
**(303) 844-1381**

provide service or labor, or supply materials or equipment to satisfy the requirements of this Consent Decree.

### III. OBJECTIVES

9.     It is the purpose of the Parties to this Consent Decree to further the objectives of the CAA.

### IV. DEFINITIONS

10.     Unless otherwise defined herein, terms used in this Consent Decree shall have the meaning given to those terms in the CAA and the implementing regulations promulgated thereunder. The following terms used in this Consent Decree shall be defined, solely for purposes of this Consent Decree and the reports and documents submitted pursuant thereto, as follows:

A.          "Calendar Quarter" shall mean the three month period ending on March 31st, June 30th, September 30th, and December 31st.

B.          "Co-Plaintiff" shall mean Puget Sound Clean Air Agency.

C.          "Consent Decree" or "Decree" shall mean this Consent Decree, including any and all appendices attached to this Consent Decree.

D.          "Date of Entry" shall mean the date on which this Consent Decree is entered by the United States District Court for the Western District of Washington.

E.          "Date of Lodging" shall mean the date this Consent Decree is lodged with the United States District Court for the Western District of Washington.

CONSENT DECREE BETWEEN PLAINTIFF - 9
UNITED STATES OF AMERICA AND
DEFENDANT U.S. OIL & REFINING CO.

United States Department of Justice
Environment & Natural Resources Division
Environmental Enforcement Section
999 18th Street, Suite 370
Denver, Colorado  80202
(303) 844-1381

1    F.        "Day" or "Days" shall mean a calendar day or days.  "Working Day" shall

2    mean a day other than a Saturday, Sunday or Federal holiday.  In computing any period of time

3    under this Consent Decree, where the last day would fall on a Saturday, Sunday or Federal

4    holiday, the period shall run until the close of business on the next working day, except when a

5    specific compliance date is specified in this Consent Decree, compliance must be achieved on or

6    before that date.

7    G.        "EPA" or "U.S. EPA" shall mean the United States Environmental Protection

8    Agency and any successor departments or agencies of the United States.

9    H.        "The Refinery" and "Refinery" shall mean the refinery owned and operated by U.S.

10   Oil in Tacoma, Washington.

11   I.        "Paragraph" shall mean a portion of this Consent Decree identified by an

12   Arabic numeral.

13   J.        "Part" shall mean a portion of this Consent Decree identified by a Roman

14   numeral.

15   K.        "Parties" shall mean the United States, PSCAA, and U.S. Oil & Refining Co.

16   L.        "Section" shall mean a portion of this Consent Decree identified by a capital

17   letter.

18   M.        "U.S. Oil" shall mean U.S. Oil & Refining Co.

19   N.        "United States" shall mean the United States of America, including the United

20   States Department of Justice and the United States Environmental Protection Agency.

**V. BENZENE WASTE OPERATIONS NESHAP PROGRAM ENHANCEMENTS**

CONSENT DECREE BETWEEN PLAINTIFF - 10
UNITED STATES OF AMERICA AND
DEFENDANT U.S. OIL & REFINING CO.

**United States Department of Justice**
**Environment & Natural Resources Division**
**Environmental Enforcement Section**
**999 18th Street, Suite 370**
**Denver, Colorado 80202**
**(303) 844-1381**

Summary:  In addition to complying with all applicable requirements of 40 C.F.R. Part 61, Subpart FF ("Benzene Waste Operations NESHAP," "BWON" or "Subpart FF"), U.S. Oil agrees to undertake the measures set forth in this Part to ensure continuing compliance with Subpart FF and to minimize or eliminate benzene waste emissions.

Current Status.  U.S. Oil currently reports the Total Annual Benzene content (TAB) from wastes at the Refinery is less than 10 megagrams per year ("Mg/yr").

11.     Refinery Compliance Status Changes.  If at any time from the Date of Lodging of the Consent Decree through its termination the Refinery is determined to have a TAB equal to or greater than 10 Mg/yr, U.S. Oil will either: (a) utilize the compliance option set forth at 40 C.F.R. § 61.342(e) (hereinafter referred to as the "6 BQ compliance option") in accordance with Paragraphs 16 through 18 of this Consent Decree; or (b) take actions to reduce the TAB in accordance with Paragraph 16 of this Consent Decree.

12.     One-Time Review and Verification of the Refinery's TAB: Phase One of the Review and Verification Process.  By no later than 12 months after the Date of Entry, U.S. Oil will complete a review and verification of the Refinery's TAB.  The Phase One review and verification process will include, but need not be limited to:

        a.     an identification of each waste stream that is required to be included in the TAB (e.g., tank water draws, spent caustic, desalter rag layer dumps, desalter vessel process sampling points, streams to the sour water stripper, other sample wastes, maintenance wastes, and turnaround wastes that meet the definition of waste under Subpart FF);

CONSENT DECREE BETWEEN PLAINTIFF - 11
UNITED STATES OF AMERICA AND
DEFENDANT U.S. OIL & REFINING CO.

**United States Department of Justice
Environment & Natural Resources Division
Environmental Enforcement Section
999 18th Street, Suite 370
Denver, Colorado 80202
(303) 844-1381**

1          b.     a review and identification of the calculations and/or measurements used

2 to determine the flows of each waste stream for the purpose of ensuring the accuracy of the

3 annual waste quantity for each waste stream;

4          c.     an identification of the benzene concentration in each waste stream,

5 including sampling for benzene concentration at no less than 10 waste streams consistent with

6 the requirements of 40 C.F.R. § 61.355(c)(1) and (3); provided, however, that previous analytical

7 data or documented knowledge of waste streams may be used in accordance with 40 C.F.R. §

8 61.355(c)(2), for streams not sampled;

9

10          d.     an identification of whether or not each TAB stream is controlled

11 consistent with the requirements of Subpart FF; and

12          e.     an identification of each stream sent to the sour water stripper.

13     13.     By no later than 90 days after completion of the Phase One review and

14 verification process, U.S. Oil will submit to EPA and PSCAA a Benzene Waste Operations

15 NESHAP Compliance Review and Verification Report ("BWON Compliance Review and

16 Verification Report") that sets forth the results of Phase One, including but not limited to the

17 items identified in Paragraph 12, as well as the schematic required to be prepared under

18 Paragraph 26.

19     14.     <u>One-Time Review and Verification of the Refinery's TAB: Phase Two of the</u>

20 <u>Review and Verification Process.</u> Based on EPA's review of the BWON Compliance Review

21 and Verification Reports and after an opportunity for consultation with PSCAA, EPA may select

22 up to five (5) additional waste streams at the Refinery for sampling for benzene concentration.

23 U.S. Oil will conduct the required sampling and submit the results to EPA within ninety (90)

24

25

CONSENT DECREE BETWEEN PLAINTIFF - 12
UNITED STATES OF AMERICA AND
DEFENDANT U.S. OIL & REFINING CO.

**United States Department of Justice**
**Environment & Natural Resources Division**
**Environmental Enforcement Section**
**999 18th Street, Suite 370**
**Denver, Colorado 80202**
**(303) 844-1381**

1    days of receipt of EPA's request.  U.S. Oil will use the results of this additional sampling to

2    reevaluate the TAB and the uncontrolled benzene quantity and to amend the BWON Compliance

3    Review and Verification Report, as needed.  To the extent that EPA requires U.S. Oil to sample a

4    waste stream as part of the Phase Two review that U.S. Oil sampled and included as part of its

5    Phase One review, U.S. Oil may average the results of such sampling.  U.S. Oil will submit an

6    Amended BWON Compliance Review and Verification Report to EPA (with a copy to PSCAA)

7    within one-hundred twenty (120) days following the date of the completion of any required

8    Phase Two sampling.  This Amended BWON Compliance Review and Verification Report will

9    supersede and replace the original BWON Compliance Review and Verification Report.  In lieu

10    of an Amended BWON Compliance Review and Verification Report, U.S. Oil may elect to

11    submit a supplementary report that identifies all changes or differences identified during the

12    Phase One sampling ("Supplementary BWON Compliance Report").  If U.S. Oil submits a

13    Supplementary BWON Compliance Report, the original BWON Compliance Review and

14    Verification Report plus the Supplementary BWON Compliance Report shall constitute the final

15    report.  If Phase Two sampling is not required by EPA, the original BWON Compliance Review

16    and Verification Report will constitute the final report.

17          15.     Amended TAB Reports.  If the results of the BWON Compliance Review and

18    Verification Report indicate that the Refinery's most recently-filed TAB report does not satisfy

19    the requirements of Subpart FF, U.S. Oil will submit, by no later than one-hundred twenty (120)

20    days after submittal of the BWON Compliance Review and Verification Report, an amended

21    TAB report to EPA and PSCAA.  If an amended TAB is provided as part of U.S. Oil's BWON

CONSENT DECREE BETWEEN PLAINTIFF - 13
UNITED STATES OF AMERICA AND
DEFENDANT U.S. OIL & REFINING CO.

**United States Department of Justice**
**Environment & Natural Resources Division**
**Environmental Enforcement Section**
**999 18th Street, Suite 370**
**Denver, Colorado 80202**
**(303) 844-1381**

1   Compliance Review and Verification Report, this will be deemed the amended TAB report for

2   purposes of Subpart FF reporting.

3       16.    Implementation of Actions Necessary to Correct Non-Compliance.  If the results

4   of the BWON Compliance Review and Verification Report indicate that the Refinery has a TAB

5   of over 10 Mg/yr, U.S. Oil will submit to EPA and PSCAA, by no later than one-hundred eighty

6   (180) days after submission of the BWON Compliance Review and Verification Report, a

7   Corrective Action Plan that identifies with specificity: (a) the actions it will take to ensure that

8   the Refinery's TAB will be reduced below 10 Mg/yr for 2012 and each calendar year thereafter;

9   (b) a compliance strategy and schedule that U.S. Oil will implement to ensure that it complies

10  with the 6 BQ compliance option as soon as practicable but by no later than December 31, 2012,

11  if it cannot ensure a TAB consistently below 10 Mg/yr; or (c), in the event that new controls are

12  required to be installed at the Refinery to comply with the 6 BQ compliance option, U.S. Oil may

13  propose for EPA and PSCAA approval a compliance plan for installation of such controls, which

14  shall be completed as soon as practicable, but in no event longer than three (3) years from the

15  date of submittal of the Corrective Action Plan.

16      17.    Implementation of Actions Necessary to Correct Non-Compliance: Review of

17  Plans.  Any plan submitted pursuant to Paragraph 16 will be subject to the approval or

18  disapproval by EPA, after an opportunity for consultation with PSCAA.  Within sixty (60) days

19  after receiving any notification of disapproval from EPA, U.S. Oil will submit to EPA and

20  PSCAA a revised plan that responds to all identified deficiencies.  Unless EPA responds to the

21  revised plan within sixty (60) days, U.S. Oil will implement the proposed plan.

22

23

24

25

CONSENT DECREE BETWEEN PLAINTIFF - 14
UNITED STATES OF AMERICA AND
DEFENDANT U.S. OIL & REFINING CO.

United States Department of Justice
Environment & Natural Resources Division
Environmental Enforcement Section
999 18th Street, Suite 370
Denver, Colorado 80202
(303) 844-1381

18.    Implementation of Actions Necessary to Correct Non-Compliance: Certification of Compliance. By no later than thirty (30) days after completion of the implementation of all actions, if any, required pursuant to Paragraphs 16-17 to come into compliance with the applicable compliance option, U.S. Oil will submit its certification and a report to EPA and PSCAA that the Refinery complies with its compliance option under the Benzene Waste Operations NESHAP.

19.    Carbon Canisters. U.S. Oil will comply with the requirements of Paragraphs 19.a-k at all locations where (a) carbon canister(s) is (are) utilized as a control device under the Benzene Waste Operations NESHAP. To the extent that any applicable state or local rule, regulation, or permit contains more stringent definitions, standards, limitations, or work practices than those set forth in Paragraphs 19.a-k, then those definitions, standards, limitations or work practices will apply instead.

a.    Installation of Dual Carbon Bed Systems Operated in Series. Except as provided in subparagraph h, the Refinery will only utilize dual carbon bed systems operated in series.

b.    Report Certifying Installation. By no later than 90 Days after installation of all dual carbon canisters, U.S. Oil will submit a report to EPA and PSCAA certifying the completion of the installations. The report will include a list of all locations within the Refinery where dual carbon bed systems were installed, the installation date of each dual carbon bed system, the date that each dual carbon bed system was put into operation, whether the Refinery is monitoring for breakthrough for volatile organic compounds ("VOCs") or benzene, and the concentration of the monitored parameter that U.S. Oil uses as its definition of "breakthrough."

CONSENT DECREE BETWEEN PLAINTIFF - 15
UNITED STATES OF AMERICA AND
DEFENDANT U.S. OIL & REFINING CO.

United States Department of Justice
Environment & Natural Resources Division
Environmental Enforcement Section
999 18th Street, Suite 370
Denver, Colorado 80202
(303) 844-1381

1   U.S. Oil must provide written notification to EPA and PSCAA at least thirty (30) days prior to

2   changing either the parameter that it is monitoring and/or the concentration that it defines as

3   "breakthrough."

4            c.       Prohibition of Use of Single Bed Canisters.  Except as expressly provided

5   in subparagraph h, the Refinery will not use single bed carbon canisters for any new units or

6   installations that require vapor control pursuant to the Benzene Waste Operations NESHAP.

7            d.       Definition of "Breakthrough" in Dual Carbon Bed Systems.  For dual

8   carbon bed systems in series and depending upon the parameter that U.S. Oil decides to monitor,

9   "breakthrough" between the primary and secondary carbon bed is defined as any reading equal to

10  or greater than either 50 ppm VOC) or 5 ppm benzene.  At its option, U.S. Oil may utilize a

11  concentration for "breakthrough" that is lower than 50 ppm VOC or 5 ppm benzene.

12

13           e.       Monitoring for Breakthrough in Dual Carbon Bed Systems.  By no later

14  than seven (7) days after the installation of any new dual carbon bed system, the Refinery will

15  start to monitor for breakthrough between the primary and secondary carbon beds at times when

16  there is actual flow to the dual carbon bed system, in accordance with the frequency specified in

17  40 C.F.R. § 61.354(d), and will monitor the outlet of the secondary carbon bed on a monthly

18  basis or at the design replacement interval of the secondary carbon bed (whichever is less) to

19  verify the proper functioning of the system.  In the event there is no flow to the dual carbon bed

20  system, the Refinery shall document the lack of flow and remonitor at the next monitoring

21  period.

22           f.       Replacing Canisters in Dual Carbon Bed Systems.  The Refinery will

23  replace the original primary carbon bed (or route the flow to an appropriate alternative control

24

25

CONSENT DECREE BETWEEN PLAINTIFF - 16
UNITED STATES OF AMERICA AND
DEFENDANT U.S. OIL & REFINING CO.

**United States Department of Justice**
**Environment & Natural Resources Division**
**Environmental Enforcement Section**
**999 18th Street, Suite 370**
**Denver, Colorado  80202**
**(303) 844-1381**

device) immediately when breakthrough is detected.  The original secondary carbon bed will become the new primary carbon bed and a fresh carbon bed will become the secondary bed unless both the primary and secondary carbon beds are replaced.  For purposes of this Subparagraph, "immediately" will mean twenty-four (24) hours  except where breakthrough is detected on a Saturday, Sunday, or federal holiday, "immediately" will mean within 48 hours or on the next business day, whichever is sooner.

g.    In lieu of replacing the primary carbon bed immediately, U.S. Oil may elect to monitor the secondary carbon bed on the day breakthrough between the primary and secondary carbon bed is identified and each calendar day thereafter.  This daily monitoring will continue until the primary carbon bed is replaced.  If the monitored parameter (either benzene or VOC) is detected above background levels at the outlet of the secondary carbon bed during this period of daily monitoring, both carbon beds must be replaced within twenty-four (24) hours.

h.    Limited Use of Single Bed Canisters.  The Refinery may utilize properly-sized single bed canisters for short-term operations such as with temporary storage tanks or as temporary control devices.  For single bed canisters operated as part of a single canister system, breakthrough is defined for purposes of this Decree as any reading of VOC or benzene above background level.  Beginning no later than the Date of Entry, the Refinery will monitor for breakthrough from single bed carbon canisters each day there is actual flow to the carbon canister.

i.    Replacing Canisters in Single Bed Canister Systems.  The Refinery will replace the single bed carbon canister with a fresh carbon canister or with fresh carbon, discontinue flow or route the stream to an alternate, appropriate device immediately when

CONSENT DECREE BETWEEN PLAINTIFF - 17
UNITED STATES OF AMERICA AND
DEFENDANT U.S. OIL & REFINING CO.

United States Department of Justice
Environment & Natural Resources Division
Environmental Enforcement Section
999 18th Street, Suite 370
Denver, Colorado  80202
(303) 844-1381

1  breakthrough is detected.  For this Subparagraph, "immediately" will mean eight (8) hours for

2  single bed canisters of 55 gallons or less and twenty-four (24) hours for single bed canisters

3  greater than 55 gallons.  Where breakthrough is detected on a Saturday, Sunday, or federal

4  holiday, replacement must occur within 48 hours or on the next business day, whichever is

5  sooner.  If flow to a single bed canister is discontinued under this Subparagraph, such canister

6  may not be placed back into BWON vapor control service until it has been appropriately

7  regenerated or replaced.

8          j.        Maintaining Canister Supplies.  U.S. Oil will maintain a supply of fresh

9  carbon or carbon canisters at the Refinery at all times.

10          k.        Records relating to Canisters.  Records for the requirements of Paragraphs

11

12  19.a-19.j will be maintained in accordance with 40 C.F.R. § 61.356(j)(10).

13      20.      Annual Review.  By no later than 180 days after the Date of Entry, U.S. Oil will

14  modify existing Management of Change procedures at the Refinery or develop a new program to

15  annually review process and project information for the Refinery, including but not limited to

16  construction projects, to ensure that all new benzene waste streams are included in the Refinery's

17  waste stream inventory during the life of the Consent Decree.

18      21.      Laboratory Audits.

19          a.        U.S. Oil will conduct audits of all laboratories that perform analyses of the

20  Refinery's benzene waste NESHAP samples to ensure that proper analytical and quality

21

22  assurance/quality control procedures are followed.

23          b.        By no later than one year after the Date of Entry, U.S. Oil will complete

24  audits of all of the laboratories it uses to perform analyses of benzene waste NESHAP samples.

25

CONSENT DECREE BETWEEN PLAINTIFF - 18
UNITED STATES OF AMERICA AND
DEFENDANT U.S. OIL & REFINING CO.

United States Department of Justice
Environment & Natural Resources Division
Environmental Enforcement Section
999 18th Street, Suite 370
Denver, Colorado  80202
(303) 844-1381

From and after one year from the Date of Entry, U.S. Oil will audit any new laboratory to be used for analyses of the Refinery's benzene waste NESHAP samples prior to such use.

c.     During the life of this Consent Decree, U.S. Oil will conduct subsequent laboratory audits, such that each laboratory is audited every two (2) years.

d.     U.S. Oil may retain third parties to conduct these audits or use audits conducted by others as its own, but the responsibility and obligation to ensure that the Refinery complies with this Consent Decree and Subpart FF rest solely with U.S. Oil.

e.     In lieu of conducting laboratory audits as required by this Paragraph, U.S. Oil may elect to use a laboratory that is accredited under the National Environmental Laboratory Accreditation Program ("NELAP") no more often than on an alternating basis (*i.e.,* following a laboratory audit performed as required by this Paragraph, U.S. Oil may use a NELAP accredited laboratory in lieu of performing its own audit pursuant to this Paragraph).

22.     Benzene Spills. For each spill at the Refinery after Date of Entry, U.S. Oil shall review the spill to determine if benzene waste, as defined by Subpart FF, was generated. For each spill involving the release of more than 10 pounds of benzene in a 24-hour period, U.S. Oil: (i) shall include benzene waste generated by the spill in the Refinery's TAB, as required by 40 C.F.R. § 61.342; and (ii) shall account for such benzene waste in accordance with the applicable compliance option calculations, as appropriate under Subpart FF, unless the benzene waste is properly managed in controlled waste management units at the Refinery.

23.     Training. By no later than the 90 days after the Date of Entry, U.S. Oil will develop and begin implementation of annual (*i.e.,* once each calendar year) training for all employees asked to draw benzene waste samples.

CONSENT DECREE BETWEEN PLAINTIFF - 19
UNITED STATES OF AMERICA AND
DEFENDANT U.S. OIL & REFINING CO.

United States Department of Justice
Environment & Natural Resources Division
Environmental Enforcement Section
999 18th Street, Suite 370
Denver, Colorado 80202
(303) 844-1381

24.     Additional Training: U.S. Oil will comply with the provisions of Paragraph 24.a and 24.b if and when the Refinery's TAB equals or exceeds 10 Mg/yr and the Refinery elects the 6 BQ compliance option.

a.      U.S. Oil will complete the development of standard operating procedures for all control equipment used to comply with the Benzene Waste Operations NESHAP.

b.      U.S. Oil will complete an initial training program regarding these procedures identified pursuant to Paragraph 24.a for all operators assigned to this control equipment.  Comparable training will also be provided to any persons who subsequently become operators, prior to their assumption of this duty.  Until termination of this Decree, "refresher" training in these procedures will be performed at a minimum on a three (3) year cycle.

c.      U.S. Oil will propose a schedule for training at the same time that it proposes a plan, pursuant to Paragraph 16, that identifies the compliance strategy and schedule that the Refinery will implement to come into compliance with the 6 BQ compliance option.

25.     Training: Contractors.  As part of U.S. Oil's training programs, U.S. Oil must ensure that the employees of any contractors hired to perform the requirements of Paragraphs 23 and 24 (when applicable) are properly trained to implement all applicable provisions of this Part.

26.     Benzene-Containing Waste Management: Schematics.  U.S. Oil will include in the BWON Compliance Review and Verification Report required to be submitted to EPA and PSCAA pursuant to Paragraph 13 schematics for the Refinery that:

a.      depict the waste management units (including sewers) that handle, store, and transfer wastes subject to Subpart FF.

b.      identify the control status of each waste management unit; and

CONSENT DECREE BETWEEN PLAINTIFF - 20
UNITED STATES OF AMERICA AND
DEFENDANT U.S. OIL & REFINING CO.

**United States Department of Justice**
**Environment & Natural Resources Division**
**Environmental Enforcement Section**
**999 18th Street, Suite 370**
**Denver, Colorado  80202**
**(303) 844-1381**

c.     show how the waste streams are transferred within the Refinery. U.S. Oil will include with the schematics a quantification of all uncontrolled waste subject to Subpart FF. If requested by EPA, U.S. Oil will submit to EPA within ninety (90) days of the request, revised schematics regarding the characterization of these wastes and the appropriate control standards.

27.     <u>Non-Aqueous Benzene Waste Streams</u>. If the TAB equals or exceeds 10 Mg/year, all waste management units handling non-exempt, non-aqueous benzene wastes, as defined in Subpart FF, will meet the applicable control standards of Subpart FF.

28.     <u>Wastes Subject to Subpart FF</u>. For purposes of calculating the Refinery's TAB pursuant to the requirements of 40 C.F.R. § 61.342(a), U.S. Oil will include all wastes subject to Subpart FF that become "aqueous" until such streams are recycled to a process or put into a process feed tank (unless the tank is used primarily for the storage of wastes). Appropriate adjustments will be made to such calculations to avoid the double-counting of benzene. For purposes of complying with the 6 BQ compliance option, all waste management units handling benzene waste streams will either meet the applicable control standards of Subpart FF or will have their uncontrolled benzene quantity count toward the applicable 6 BQ limit.

29.     <u>Benzene Waste Operations Sampling Plans: General</u>. By no later than 180 days after Date of Entry, U.S. Oil will submit to EPA and PSCAA a BWON sampling plan for the sampling of benzene waste streams that U.S. Oil will undertake to estimate quarterly and annual TABs, as required by this Consent Decree, for the Refinery.

30.     <u>Benzene Waste Operations Sampling Plans: Content Requirements</u>.

a.     The sampling plan will:

CONSENT DECREE BETWEEN PLAINTIFF - 21
UNITED STATES OF AMERICA AND
DEFENDANT U.S. OIL & REFINING CO.

**United States Department of Justice**
**Environment & Natural Resources Division**
**Environmental Enforcement Section**
**999 18th Street, Suite 370**
**Denver, Colorado 80202**
**(303) 844-1381**

i.      identify all waste streams that contributed 0.05 Mg/yr or more at the point of generation to the previous year's TAB calculations; and

ii.      identify the proposed sampling locations on the schematic developed pursuant to Paragraph 26 and the calculation methods to be used in calculating quarterly and annual TAB calculations under the terms of Paragraph 33; and

iii.      require U.S. Oil to take and analyze, in each calendar quarter, at least three representative samples from all waste streams identified in Paragraph 30.a.i and all locations identified in Paragraph 30.a.ii.

b.      Compliance Plan under Paragraph 16.  If U.S. Oil must implement a Corrective Action Plan under Paragraph 16, it may submit a proposed sampling plan that does not include sampling points in locations within the Refinery that are subject to changes proposed in the Corrective Action Plan.  To the extent that U.S. Oil believes that such sampling will not be effective until it completes implementation of the Corrective Action Plan, by no later than sixty (60) days prior to the due date for the submission of the sampling plan, U.S. Oil may request EPA approval for postponing its submitting a sampling plan and commencing sampling until the Corrective Action Plan is completed.  Should EPA disapprove, the Refinery will submit a sampling plan by the applicable due date in Paragraph 17.

31.      Benzene Waste Operations Sampling Plans: Timing for Implementation.  U.S Oil will implement the sampling required under each sampling plan during the first full calendar quarter after it submits the plan for the Refinery.  U.S. Oil will continue to implement the sampling plan (i) unless and until EPA disapproves the plan; or (ii) unless and until U.S. Oil modifies the plan, with EPA's approval, under Paragraph 32.

CONSENT DECREE BETWEEN PLAINTIFF - 22
UNITED STATES OF AMERICA AND
DEFENDANT U.S. OIL & REFINING CO.

**United States Department of Justice**
**Environment & Natural Resources Division**
**Environmental Enforcement Section**
**999 18th Street, Suite 370**
**Denver, Colorado  80202**
**(303) 844-1381**

32.    Benzene Waste Operations Sampling Plans: Modifications.

a.    Changes in Processes, Operations or Other Factors.  If changes in processes, operations or other factors lead U.S. Oil to conclude that a proposed or approved sampling plan may no longer provide an accurate basis for estimating the Refinery's quarterly or calendar year annual TABs or benzene quantities under Paragraph 33, then by no later than ninety (90) days after U.S. Oil determines that the plan no longer provides an accurate basis, it will submit to EPA and PSCAA a revised plan for EPA approval.  In the first full calendar quarter after submitting the revised plan, the Refinery will implement the revised plan.  The Refinery will continue to implement the revised plan unless and until EPA disapproves the revised plan after an opportunity for consultation with PSCAA.

b.    Modifications to Sampling Schedule.  If, after four (4) consecutive quarters of sampling pursuant to Paragraphs 29 through 32, all individual quarterly TAB calculations are less than 1.750 Mg, U.S. Oil may reduce the frequency of sampling from quarterly to annually.  If, after moving to annual sampling, any TAB calculation is greater than or equal to 7.000 Mg/yr, U.S. Oil shall institute quarterly sampling no later than the end of the next calendar quarter.

33.    Quarterly and Annual Estimations of TABs and Uncontrolled Benzene Quantities. At the end of each calendar quarter, or year pursuant to Paragraph 32.b, and based on sampling results and flow calculations, U.S. Oil will calculate a quarterly and projected annual TAB.  If the Refinery elects the 6 BQ compliance option pursuant to Paragraph 11 it shall also calculate the uncontrolled benzene quantities in accordance with Subpart FF.  In making these calculations, U.S. Oil will use the average of the three samples collected at each sampling

United States Department of Justice
Environment & Natural Resources Division
Environmental Enforcement Section
999 18th Street, Suite 370
Denver, Colorado  80202
(303) 844-1381

1   location. If these calculations do not identify any potential exceedances of the benzene

2   quantities identified in Paragraph 34, U.S. Oil will submit these calculations in the reports due

3   under Part IX of this Decree.

4       34.   Corrective Measures: Basis. Except as set forth in Paragraph 35, U.S. Oil will

5   implement corrective measures specified in Paragraph 36 if:

6           a.   the quarterly TAB equals or exceeds 2.5 Mg or the projected TAB equals

7   or exceeds 10 Mg/yr ; or

8           b.   the TAB equals or exceeds 10 Mg/yr and the Refinery elects the 6 BQ

9   compliance option pursuant to Paragraph 11 and either: (i) the quarterly uncontrolled benzene

10  quantity equals or exceeds 1.5 Mg; or (ii) the projected calendar year uncontrolled benzene

11  quantity equals or exceeds 6 Mg/yr.

12

13      35.   Exception to Implementing Corrective Measures. If U.S. Oil can identify the

14  reason(s) in any particular calendar quarter that the quarterly and projected calendar year

15  calculations result in benzene quantities in excess of those identified in Paragraph 34 and states

16  that it does not expect such reason or reasons to recur, then U.S. Oil may exclude the benzene

17  quantity attributable to the identified reason(s) from the projected calendar year quantity. If that

18  exclusion results in no potential exceedances of the benzene quantities identified in Paragraph

19  34, then U.S. Oil will not be required to implement corrective measures under Paragraphs 34 and

20  36, and then it may exclude the uncontrolled benzene attributable to the identified reason(s). At

21  any time that U.S. Oil proceeds under this Paragraph, it will describe how it satisfied the

22  conditions in this Paragraph in the reports due under Part IX of this Decree.

23

24

25

CONSENT DECREE BETWEEN PLAINTIFF - 24
UNITED STATES OF AMERICA AND
DEFENDANT U.S. OIL & REFINING CO.

United States Department of Justice
Environment & Natural Resources Division
Environmental Enforcement Section
999 18th Street, Suite 370
Denver, Colorado  80202
(303) 844-1381

36.     Compliance Assurance Plan.  If U.S. Oil meets one or more conditions in Paragraph 34 (except as provided under Paragraph 35), then by no later than sixty (60) days after the end of the calendar quarter in which one or more of the conditions were met, U.S. Oil will submit a Compliance Assurance Plan to EPA with a copy to PSCAA.  In that Compliance Assurance Plan, U.S. Oil will identify the cause(s) of the potentially-elevated benzene quantities, all corrective actions that it has taken or plans to take to ensure that the cause(s) will not recur, and the schedule of actions that it will take to ensure that the Refinery complies with the Benzene Waste Operations NESHAP for the calendar compliance year.  U.S. Oil will implement the Plan unless and until EPA disapproves the plan after an opportunity for consultation with PSCAA.  The Compliance Assurance Plan shall be implemented no later than December 31 of the year following the year in which the conditions of Paragraph 34 were met.

37.     Third Party Assistance.  If at least one of the conditions in Paragraph 34 exists at the Refinery in two consecutive quarters, and the provisions of Paragraph 35 do not apply, then U.S. Oil will retain a third party contractor during the following quarter to undertake and complete a TAB study and compliance review at the Refinery within 90 days (*i.e.*, by the end of the following calendar quarter).  By no later than 90 days after U.S. Oil receives the results of the third party TAB study and compliance review, it will submit such results and a plan and schedule for remedying any deficiencies identified in the TAB study and compliance review to EPA and PSCAA.  U.S. Oil will implement the proposed plan unless and until EPA disapproves the plan after an opportunity for consultation with PSCAA.

38.     Recordkeeping and Reporting Requirements:  U.S. Oil will submit the following information along with the reports due pursuant to Part IX of this Decree:

CONSENT DECREE BETWEEN PLAINTIFF - 25
UNITED STATES OF AMERICA AND
DEFENDANT U.S. OIL & REFINING CO.

United States Department of Justice
Environment & Natural Resources Division
Environmental Enforcement Section
999 18th Street, Suite 370
Denver, Colorado 80202
(303) 844-1381

a.      Sampling Results under Paragraphs 32 and 33.  The report will include a list of all waste streams sampled, the results of the benzene analysis for each sample, and the computation of the quarterly and projected calendar year TAB and the quarterly and projected calendar year uncontrolled benzene quantity (if required to comply with the 6 BQ compliance option);

b.      Training.  A summary of initial and/or subsequent training conducted in accordance with Paragraphs 23-25; and

c.      Laboratory Audits.  A summary of initial and subsequent audits conducted pursuant to Paragraph 21, including at a minimum, the identification of each laboratory audited, a description of the methods used in the audit, and the results of the audit.  If U.S. Oil has elected to use a NELAP accredited lab, the report shall identify each laboratory used and shall include documentation of NELAP accreditation for each laboratory used.

39.     At any time after two years of reporting pursuant to the requirements of Paragraph 38, U.S. Oil may submit a request to EPA to modify the reporting frequency for any or all of the reporting categories of Paragraph 38.  This request may include a request to report the previous year's projected calendar year TAB and uncontrolled benzene quantity annually rather than semi-annually.  U.S. Oil will not change the due dates for its reports under Paragraph 38 unless and until EPA approves U.S. Oil's request after an opportunity for consultation with PSCAA.

40.     Certifications Required in this Part.  Certifications required under this Part will be made in accordance with the provisions of Part IX.

## VI.  LEAK DETECTION AND REPAIR ("LDAR") PROGRAM ENHANCEMENTS

CONSENT DECREE BETWEEN PLAINTIFF - 26
UNITED STATES OF AMERICA AND
DEFENDANT U.S. OIL & REFINING CO.

United States Department of Justice
Environment & Natural Resources Division
Environmental Enforcement Section
999 18th Street, Suite 370
Denver, Colorado  80202
(303) 844-1381

Summary: In addition to complying with all applicable Leak Detection and Repair ("LDAR") regulations, U.S. Oil agrees to the measures set forth in this Part, including audits of the components in light liquid and gaseous service at the Refinery to determine compliance with LDAR requirements and to correct any areas of non-compliance, as well as refinery-wide measures to minimize or eliminate fugitive emissions from components in light liquid and gaseous service.

41.     As of the Date of Entry, equipment within each existing "process unit" (as defined by 40 C.F.R. § 60.591) at the Refinery shall become an "affected facility" for purposes of 40 C.F.R. Part 60, Subpart GGG, except as provided in 40 C.F.R. § 60.593 "Exceptions," and shall become subject to and comply with the requirements of 40 C.F.R. Part 60, Subpart GGG, and the requirements of this Part.

42.     In order to minimize or eliminate fugitive emissions of VOCs, benzene, volatile hazardous air pollutants ("VHAPs"), and organic hazardous air pollutants ("HAPs") from equipment in light liquid and/or in gas/vapor service, U.S. Oil shall implement the enhancements at Paragraph 43 through Paragraph 71 to the LDAR programs under 40 C.F.R. Part 60, Subpart GGG, and Part 63, Subpart CC.  The terms "equipment," "in light liquid service" and "in gas/vapor service" shall have the definitions set forth in the applicable provisions of 40 C.F.R. Part 60, Subparts VV and GGG, and Part 63, Subpart CC.

43.     Written Refinery-Wide LDAR Program.  By no later than 180 days after Date of Entry, U.S. Oil shall develop and maintain a written, Refinery-wide program for compliance with all applicable federal, state and local LDAR regulations ("the LDAR Program").  U.S. Oil shall implement this Program on a Refinery-wide basis and update such program as may be

CONSENT DECREE BETWEEN PLAINTIFF - 27
UNITED STATES OF AMERICA AND
DEFENDANT U.S. OIL & REFINING CO.

United States Department of Justice
Environment & Natural Resources Division
Environmental Enforcement Section
999 18th Street, Suite 370
Denver, Colorado 80202
(303) 844-1381

necessary to ensure continuing compliance through and after termination.  The LDAR Program shall include at a minimum:

      a.     A facility-wide leak rate goal that will be a target for achievement;

      b.     An identification of all equipment in light liquid and/or in gas/vapor service in the Refinery that has the potential to leak VOCs, HAPs, VHAPs, and benzene;

      c.     Procedures for identifying leaking equipment within process units;

      d.     Procedures for repairing and keeping track of leaking equipment;

      e.     Procedures (*e.g.*, a Management of Change program) to ensure that components subject to LDAR requirements that are added to the Refinery during scheduled maintenance and construction activities are integrated into the LDAR Program;

      f.     A process for evaluating new and replacement LDAR equipment that includes active consideration of equipment or techniques that will minimize leaks and/or eliminate chronic leakers; and

      g.     A definition of "LDAR Personnel" (to include Refinery employees and contractors having LDAR responsibilities) and the designation of an "LDAR Coordinator" who shall have the responsibility to implement improvements to the LDAR program.

44.     By no later than 180 days after Date of Entry, U.S. Oil shall submit a copy of the Refinery's initial written LDAR Program to EPA and to PSCAA.  EPA shall review and may comment on the written program after an opportunity for consultation with PSCAA.  U.S. Oil shall address EPA's comments (if any).  A description of program changes shall be maintained on-site during the term of the Consent Decree but need not be submitted to the agencies.

CONSENT DECREE BETWEEN PLAINTIFF - 28
UNITED STATES OF AMERICA AND
DEFENDANT U.S. OIL & REFINING CO.

**United States Department of Justice**
**Environment & Natural Resources Division**
**Environmental Enforcement Section**
**999 18th Street, Suite 370**
**Denver, Colorado 80202**
**(303) 844-1381**

45.    <u>Training</u>. U.S. Oil will commence implementation of the following training programs:

a.    By no later than 180 days after Date of Entry, for any employee newly-assigned to LDAR responsibilities, U.S. Oil shall require that each such employee satisfactorily complete LDAR training prior to beginning any LDAR work;

b.    By no later than 180 days after Date of Entry, for all the Refinery's employees assigned specific LDAR responsibilities as a primary job function, such as monitoring technicians, database users, QA/QC personnel and the LDAR Coordinator, U.S. Oil shall provide and require completion of initial training before the employee begins LDAR responsibilities and shall provide refresher training at least once every three years;

c.    By no later than 180 days after Date of Entry, for all employee operations and maintenance personnel, U.S. Oil shall provide and require completion of an initial training program that includes instruction on aspects of LDAR that are relevant to the person's duties. Refresher training for these personnel shall be performed every three years; and

d.    If contract employees are performing LDAR work, U.S. Oil shall assure that its contractor complies with the training requirements in Subparagraphs 45.a-c, as appropriate, for all such contractor employees and shall require the contractor provide its training information and records to U.S. Oil.

46.    <u>LDAR Audits</u>. U.S. Oil shall implement the Refinery-wide audits set forth in Paragraphs 47-51 to ensure the Refinery's compliance with all applicable LDAR requirements. The LDAR audits shall include but not be limited to:

a.    Performing comparative monitoring;

CONSENT DECREE BETWEEN PLAINTIFF - 29
UNITED STATES OF AMERICA AND
DEFENDANT U.S. OIL & REFINING CO.

United States Department of Justice
Environment & Natural Resources Division
Environmental Enforcement Section
999 18th Street, Suite 370
Denver, Colorado 80202
(303) 844-1381

b.       Reviewing records to ensure that monitoring and repairs were completed in the required periods;

c.       Reviewing component identification procedures, tagging procedures and data management procedures; and

d.       Observing the LDAR technicians' calibration and monitoring techniques.

During the LDAR audits, leak rates shall be calculated for each process unit where comparative monitoring was performed.

47.      Initial Compliance Audit. By no later than six (6) months after the Date of Entry, U.S. Oil shall engage a third-party contractor to undertake a refinery-wide audit of its compliance with the LDAR regulations to include, at a minimum, each of the audit requirements set forth in Paragraphs 48-51.

48.      Third-Party Audits. U.S. Oil shall retain an independent contractor(s) with expertise in LDAR program requirements to perform a third-party audit of its LDAR Program no later than four (4) years after the initial compliance audit and thereafter at least once every four (4) years.

49.      Internal Audits. The Refinery shall conduct internal audits of its LDAR Program using personnel familiar with LDAR program requirements. The Refinery shall complete the first internal LDAR audit by no later than two (2) years after the initial compliance audit under Paragraph 47. Internal audits of the Refinery shall be conducted at least once every four (4) years thereafter.

**United States Department of Justice**
**Environment & Natural Resources Division**
**Environmental Enforcement Section**
**999 18th Street, Suite 370**
**Denver, Colorado  80202**
**(303) 844-1381**

50.   <u>Audit Every Two Years</u>.  The Refinery may elect to retain third-parties to undertake the internal audits under Paragraph 49, provided that an audit occurs every two (2) years.

51.   <u>Implementation of Actions Necessary to Correct Non-Compliance</u>.  If the results of any of the audits conducted pursuant to Paragraphs 47-49 identify any areas of non-compliance, U.S. Oil shall implement all steps necessary to correct the area(s) of non-compliance as soon as practicable, and to prevent a recurrence of the cause of the non-compliance to the extent practicable.  Within 60 days of completion of an audit, U.S. Oil shall either report to EPA and PSCAA that U.S. Oil is in compliance or if non-compliance is ongoing submit in writing a proposed compliance schedule for correcting the non-compliance.  Within 60 days of submission of a non-compliance report, U.S. Oil shall certify to EPA that the Refinery has completed related corrective action and is in compliance or is following the compliance schedule.

52.   <u>Internal Leak Definition for Valves and Pumps</u>.  The Refinery shall utilize the internal leak definitions in Paragraphs 53-54 for valves and pumps in light liquid and/or gas/vapor service, unless other permit(s), regulations, or laws require the use of lower leak definitions.

53.   <u>Leak Definition for Valves</u>.  By no later than 18 months after the Date of Entry, the Refinery shall utilize an internal leak definition of 500 ppm VOCs for all of the Refinery's valves that are in HAP or VOC service, excluding pressure relief devices ("Affected Valves").

54.   <u>Leak Definition for Pumps</u>.  By no later than 18 months after the Date of Entry, the Refinery shall utilize an internal leak definition of 2,000 ppm VOCs for all of the Refinery's pumps that are in HAP or VOC service ("Affected Pumps").

CONSENT DECREE BETWEEN PLAINTIFF - 31
UNITED STATES OF AMERICA AND
DEFENDANT U.S. OIL & REFINING CO.

United States Department of Justice
Environment & Natural Resources Division
Environmental Enforcement Section
999 18th Street, Suite 370
Denver, Colorado  80202
(303) 844-1381

55.    Reporting of Valves and Pumps Based on the Internal Leak Definitions.  For any report other than the reports required under this Part, including but not limited to reports under Federal, State and local regulations and reports under any permit, U.S. Oil may continue to report leak rates in Affected Valves and Affected Pumps against the applicable regulatory or permit leak definition or use the lower, internal leak definitions specified in Paragraphs 53-54. U.S. Oil will identify in the report required by this Part which definition is being used.

56.    Recording, Tracking, Repairing and Re-Monitoring Leaks Based on the Internal Leak Definitions.  By no later than 18 months after the Date of Entry, U.S. Oil shall record, track, repair and remonitor all leaks in excess of the internal leak definitions in Paragraphs 53-54. U.S. Oil shall have five (5) days to make an initial repair attempt and remonitor the component under Paragraph 57 and thirty (30) days either to make repairs and remonitor leaks that are greater than the internal leak definitions but less than the applicable regulatory leak definitions or to place the component on the delay of repair list according to Paragraph 67.  All records of repairs, repair attempts, and remonitoring shall be maintained for the life of the Consent Decree.

57.    Initial Attempt at Repair of Valves.  Beginning no later than 18 months after the Date of Entry, the Refinery shall promptly make an "initial attempt" at repair on any Affected Valve that has a reading greater than 200 ppm of VOCs, excluding control valves and other valves that LDAR personnel are not authorized to repair.  The Refinery, or its designated contractor, shall remonitor the leaking Affected Valve within five (5) days of identification.  If the remonitored leak reading is below the internal leak definition in Paragraphs 53, no further action will be necessary.  If the remonitored leak reading is greater than the internal leak

CONSENT DECREE BETWEEN PLAINTIFF - 32
UNITED STATES OF AMERICA AND
DEFENDANT U.S. OIL & REFINING CO.

**United States Department of Justice**
**Environment & Natural Resources Division**
**Environmental Enforcement Section**
**999 18th Street, Suite 370**
**Denver, Colorado 80202**
**(303) 844-1381**

definition in Paragraphs 53, the Refinery shall repair the leaking Affected Valve according to the requirements under Paragraph 56. All records of repairs, repair attempts, and remonitoring shall be maintained for the life of the Consent Decree.

58.     LDAR Monitoring Frequency: Pumps.  Unless more frequent monitoring is required by a federal, state or local regulation when the lower internal leak definition for Affected Pumps becomes applicable pursuant to the provisions of Paragraph 54, the Refinery shall begin monitoring Affected Pumps in light liquid service, other than dual-mechanical seal pumps or pumps vented to a control device, at the lower leak definition on a monthly basis.

59.     LDAR Monitoring Frequency: Valves.  Unless more frequent monitoring is required by a federal, state or local regulation when the lower internal leak definition for Affected Valves becomes applicable pursuant to the provisions of Paragraphs 53, the Refinery shall monitor Affected Valves, other than difficult-to-monitor or unsafe-to-monitor valves, on a quarterly basis.

60.     Monitoring after Turnaround or Maintenance.  The Refinery will have the option of monitoring Affected Valves and Affected Pumps within process unit(s) after completing a documented maintenance, startup, or shutdown activity without having leaks, detected at concentrations greater than the leak definitions required by this Consent Decree but less than regulatory leak definitions, count as a scheduled monitoring activity, provided the Refinery monitors according to the following schedule:

a.     For events involving 250 or fewer Affected Valves and Affected Pumps, monitor within one week after completion of the documented maintenance, startup or shutdown activity;

CONSENT DECREE BETWEEN PLAINTIFF - 33
UNITED STATES OF AMERICA AND
DEFENDANT U.S. OIL & REFINING CO.

**United States Department of Justice**
**Environment & Natural Resources Division**
**Environmental Enforcement Section**
**999 18th Street, Suite 370**
**Denver, Colorado  80202**
**(303) 844-1381**

b.     For events involving greater than 250 but fewer than 500 Affected Valves and Affected Pumps, monitor within two (2) weeks after completion of the documented maintenance, startup, or shutdown activity; and

c.     For events involving greater than 500 and up to 1000 Affected Valves and Affected Pumps, monitor within four (4) weeks of completion of the documented maintenance, startup, or shutdown activity.

61.     Electronic Storing and Reporting of LDAR Data.  The Refinery has and will continue to maintain an electronic database for recordkeeping and reporting of LDAR data.

62.     Electronic Data Collection During LDAR Monitoring and Transfer.  Beginning no later than the Date of Entry, the Refinery shall use dataloggers and/or electronic data collection devices during LDAR monitoring.  The Refinery, or its designated contractor, shall use its best efforts to transfer, on a daily basis, electronic data from electronic datalogging devices to the electronic database of Paragraph 61.  For all monitoring events in which an electronic data collection device is used, the collected monitoring data shall include a time and date stamp, and instrument and operator identification.  The Refinery may use paper logs where necessary or more feasible (*e.g.*, small rounds, remonitoring, or when dataloggers are not available or broken), and shall record, at a minimum, the identification of the technician undertaking the monitoring, the date, the daily start and end time for monitoring, and the identification of the monitoring equipment.  The Refinery shall transfer any manually recorded monitoring data to the electronic database of Paragraph 61 within seven (7) days of monitoring.  U.S. Oil shall maintain the LDAR information required by this paragraph for the life of the

CONSENT DECREE BETWEEN PLAINTIFF - 34
UNITED STATES OF AMERICA AND
DEFENDANT U.S. OIL & REFINING CO.

United States Department of Justice
Environment & Natural Resources Division
Environmental Enforcement Section
999 18th Street, Suite 370
Denver, Colorado 80202
(303) 844-1381

1   Consent Decree, and shall provide such LDAR information in the original electronic format upon

2   request by EPA or PSCAA.

3       63.     QA/QC of LDAR Data.  Beginning no later than the Date of Entry, U.S. Oil shall

4   develop and implement procedures to ensure a quality assurance/quality control ("QA/QC")

5   review of all data generated by LDAR monitoring technicians.  U.S. Oil shall ensure that

6   monitoring data collected by monitoring technicians is reviewed for QA/QC by the Refinery

7   personnel weekly.  At least once per calendar quarter, U.S. Oil shall QA/QC the monitoring data

8   collected during the quarter which shall include, but not be limited to, an evaluation of the

9   number of components monitored per technician, time between monitoring events, and abnormal

10  data patterns.  Results from LDAR monitoring in excess of the Leak Definitions in Paragraphs

11  53 and 54 shall be reported to the appropriate operating supervisors daily.

12

13      64.     LDAR Personnel.  By no later than the Date of Entry, U.S. Oil shall maintain a

14  position responsible for LDAR management, with the authority to implement the LDAR

15  Program at the Refinery ("LDAR Coordinator").

16      65.     Adding New Valves and Pumps.  By no later than 180 days after the Date of

17  Entry, U.S. Oil shall establish a tracking program for maintenance records (e.g., a Management

18  of Change program) to ensure that Affected Valves and Affected Pumps added to the Refinery

19  during maintenance and construction are integrated into the LDAR program.

20      66.     Calibration Drift Assessment.  Beginning no later than 18 months after the Date

21  of Entry, the Refinery shall conduct calibration drift assessments of LDAR monitoring

22  equipment at the end of each monitoring shift, at a minimum.  The Refinery shall conduct the

23  calibration drift assessment using a 500 ppm calibration gas.  All calibrations of LDAR

24

25

CONSENT DECREE BETWEEN PLAINTIFF - 35
UNITED STATES OF AMERICA AND
DEFENDANT U.S. OIL & REFINING CO.

United States Department of Justice
Environment & Natural Resources Division
Environmental Enforcement Section
999 18th Street, Suite 370
Denver, Colorado  80202
(303) 844-1381

1   monitoring equipment shall use methane as the calibration gas, in accordance with 40 C.F.R. Part

2   60, App. A, EPA Reference Test Method 21, and shall maintain records of the calibrations for

3   the life of the Consent Decree.  If any calibration drift assessment after the initial calibration

4   shows a negative drift of more than 10% from the previous calibration, the Refinery shall

5   remonitor all valves that were monitored since the last calibration that had a reading greater than

6   100 ppm and shall remonitor all pumps that were monitored since the last calibration that had a

7   reading greater than 500 ppm.

8        67.   Delay of Repair.  Beginning no later than the Date of Entry, the Refinery shall

9

10  implement the following requirements for any equipment that it is allowed to place on the "delay

11  of repair" list for repair under 40 C.F.R. § 60.482-9(a):

12       a.   For all equipment:

13            i.    Require sign-off by the appropriate operating supervisor that the

14  piece of equipment is technically infeasible to repair without a process unit shutdown, before the

15  component is eligible for inclusion on the "delay of repair" list; and

16            ii.   Include equipment that is placed on the delay of repair list in the

17  Refinery's regular LDAR monitoring.

18       b.   For valves:  For Affected Valves (other than control valves) leaking at a

19  rate of 10,000 ppm or greater that cannot otherwise be repaired, the Refinery shall use "drill and

20  tap", or similarly effective repair methods to repair such leaking valves, rather than placing the

21  Affected Valve on the "delay of repair" list, unless the Refinery can demonstrate that there is a

22  safety, mechanical or major environmental concern posed by repairing the leak in this manner.

23  The Refinery shall make two repair attempts (if necessary) using "drill and tap", or similarly

24

25

CONSENT DECREE BETWEEN PLAINTIFF - 36
UNITED STATES OF AMERICA AND
DEFENDANT U.S. OIL & REFINING CO.

**United States Department of Justice**
**Environment & Natural Resources Division**
**Environmental Enforcement Section**
**999 18th Street, Suite 370**
**Denver, Colorado  80202**
**(303) 844-1381**

effective repair method within 30 days of identification of the leak. After two unsuccessful attempts to repair a leaking valve under this Paragraph, the Refinery may place the leaking valve on its "delay of repair" list.

c.     Any Affected Valve on the delay of repair list that will be replaced with a Certified Low-Leaking Valve or Certified Low-Leaking Valve Packing Technology at the next process unit shutdown may be excluded from equipment subject to the Interim or Final Limit on Delay of Repair, as applicable. Any such valves not so replaced shall be subject to the Interim or Final Limit on Delay of Repair, as applicable.

d.     As provided in 40 C.F.R. § 60.482-9(f), if a component has not leaked for two (2) consecutive months, it may be removed from the delay of repair list.

68.     New Method of Repair for Leaking Valves. If a new valve repair method not currently in use by the refining industry is planned to be used by the Refinery, U.S. Oil will advise EPA prior to implementing such a method or, if prior notice is not practicable, as soon as practicable after implementation.

69.     Chronic Leaker Program. The Refinery shall replace or repack all chronically leaking non-control Affected Valves at the next process unit turnaround. A chronic leaker shall be defined as any component which leaks above 10,000 ppm twice in any four (4) consecutive quarters. If a component has not leaked above 10,000 ppm for a period of twelve (12) consecutive quarters or more prior to a turnaround, it is exempt from the requirements in this Paragraph.

United States Department of Justice
Environment & Natural Resources Division
Environmental Enforcement Section
999 18th Street, Suite 370
Denver, Colorado  80202
(303) 844-1381

70.   Reporting. Consistent with the requirements of Part IX (Recordkeeping and Reporting), U.S. Oil shall include the information set forth below in the designated semi-annual progress report(s):

a.   First Semi-Annual Report Due under the Consent Decree. At the later of: (i) the first semi-annual report due under the Consent Decree; or (ii) the first semi-annual report after which the requirement was due, U.S. Oil shall include the following:

(1)   A copy of the written Refinery-wide LDAR Program required by Paragraph 43;

(2)   A certification of the implementation of the lower leak definitions and monitoring frequencies in Paragraphs 52, 53, 54, 58, 59, and 60;

(3)   A certification of the implementation of the "initial attempt at repair" program of Paragraph 57;

(4)   A certification of the implementation of QA/QC procedures for review of data generated by LDAR technicians as required by Paragraph 63;

(5)   An identification of the LDAR Coordinator as required by Paragraph 64;

(6)   A certification of the development of a tracking program for new valves and pumps added during maintenance and construction as required by Paragraph 65;

(7)   A certification of the implementation of the calibration drift assessment procedures of Paragraph 66;

(8)   A certification of the implementation of the "delay of repair" procedures of Paragraph 67; and

CONSENT DECREE BETWEEN PLAINTIFF - 38
UNITED STATES OF AMERICA AND
DEFENDANT U.S. OIL & REFINING CO.

United States Department of Justice
Environment & Natural Resources Division
Environmental Enforcement Section
999 18th Street, Suite 370
Denver, Colorado 80202
(303) 844-1381

(9)     A certification of the implementation of the "chronic leaker" program of Paragraph 69.

b.     <u>Semi-Annual Report for the First Two Calendar Quarters of Each Year</u>. In the semi-annual progress report that U.S. Oil submits pursuant to Part IX on August 30 of each year, U.S. Oil shall include an identification of each audit that was conducted pursuant to the requirements of Paragraphs 47-50 in the previous calendar year including an identification of the auditors, a summary of the audit results, and a summary of the actions that the Refinery took or intends to take to correct all deficiencies identified in the audits.

71.     <u>Reports due under Part IX of this Consent Decree</u>.  In each report due under Part IX of this Consent Decree, U.S. Oil shall include:

a.     <u>Training</u>.  Information identifying the measures that the Refinery took to comply with the provisions of Paragraph 45; and

b.     The following information on LDAR monitoring and repairs:

i.     the number of Affected Valves and Affected Pumps present in each process unit during the quarter;

ii.     the number of Affected Valves and Affected Pumps monitored in each process unit during each quarter;

iii.     an explanation for missed monitoring if the number of Affected Valves and Affected Pumps present exceeds the number of Affected Valves and Affected Pumps monitored during the quarter;

iv.     the number of Affected Valves and Affected Pumps found leaking;

CONSENT DECREE BETWEEN PLAINTIFF - 39
UNITED STATES OF AMERICA AND
DEFENDANT U.S. OIL & REFINING CO.

United States Department of Justice
Environment & Natural Resources Division
Environmental Enforcement Section
999 18th Street, Suite 370
Denver, Colorado  80202
(303) 844-1381

v.      the number of "difficult to monitor" pieces of equipment monitored;

vi.     a list of all equipment currently on the "delay of repair" list and the date each component was placed on the list;

vii.    the number of repair attempts not completed promptly according to Paragraph 57 or completed within five (5) days pursuant to Paragraph 56;

viii.   the number of repairs not completed within thirty (30) days or placed on the delay of repair list according to Paragraph 56 and/or Paragraph 67; and

ix.     the number of chronic leakers that do not get repaired according to the requirements of Paragraph 69.

## VII.   EMISSION CREDIT GENERATION

Summary:  This Part addresses the use of emissions reductions that will result from the installation and operation of the controls and procedures required by this Consent Decree ("CD Emissions Reductions") for the purpose of emissions netting or emissions offsets.

72.     General Prohibition.  U.S. Oil  shall not generate or use any emissions reductions, or apply for and obtain any emission reduction credits, that result from any projects conducted or controls utilized pursuant to this Consent Decree as netting reductions or emissions offsets in any PSD, major non-attainment, and/or synthetic minor New Source Review permit or permit proceeding.  However, nothing in this Consent Decree is intended to prohibit U.S. Oil from seeking to:

CONSENT DECREE BETWEEN PLAINTIFF - 40
UNITED STATES OF AMERICA AND
DEFENDANT U.S. OIL & REFINING CO.

United States Department of Justice
Environment & Natural Resources Division
Environmental Enforcement Section
999 18th Street, Suite 370
Denver, Colorado  80202
(303) 844-1381

a.      utilize or generate netting reductions or emission offset credits from refinery units that are covered by this Consent Decree to the extent that the proposed netting reductions or emission offset credits represent the difference between the emissions limitations set forth in or established pursuant to this Consent Decree for these refinery units and the more stringent emissions limitations that U.S. Oil may elect to accept for these refinery units in a permitting process;

b.      utilize or generate netting reductions or emission offset credits for refinery units that are not subject to an emission limitation pursuant to this Consent Decree;

c.      utilize emissions reductions from the installation of controls required by this Consent Decree in determining whether a project that includes both the installation of controls under this Consent Decree and other construction that occurs at the same time and is permitted as a single project triggers major New Source Review requirements; or

d.      utilize emission reductions for compliance with any rules or regulations designed to address regional haze or the non-attainment status of any area (excluding PSD and Non-Attainment New Source Review rules) that apply to the Refinery; provided, however, that U.S. Oil shall not be allowed to trade or sell any CD Emissions Reductions.

## VIII.   SUPPLEMENTAL ENVIRONMENTAL PROJECTS

Summary:  In addition to the injunctive relief required by Parts V and VI U.S. Oil will implement several Supplemental Environmental Projects to further reduce emissions and/or provide other environmental benefits.

CONSENT DECREE BETWEEN PLAINTIFF - 41
UNITED STATES OF AMERICA AND
DEFENDANT U.S. OIL & REFINING CO.

United States Department of Justice
Environment & Natural Resources Division
Environmental Enforcement Section
999 18th Street, Suite 370
Denver, Colorado 80202
(303) 844-1381

73.    In accordance with the requirements and schedule set forth in this Part VIII, U.S. Oil shall spend no less than $746,000 (the "Total SEP Cost") to implement four Supplemental Environmental Projects ("SEPs") described in Appendix A to this Consent Decree and as provided in Paragraphs 74-76, below.

74.    Supplemental Environmental Projects.  U.S. Oil is responsible for the satisfactory completion of the SEPs as provided in this Consent Decree.  If U.S. Oil does not expend the Total SEP Cost, U.S. Oil shall pay a stipulated penalty equal to the difference between the amount expended as demonstrated in the certified semi-annual reports and the Total SEP Cost. The stipulated penalty shall be paid as provided in Part XI (Stipulated Penalties) of this Consent Decree.

75.    By signing this Consent Decree, U.S. Oil certifies that it is not required, and has no liability under any federal, state, or local law or regulation or pursuant to any agreements or orders of any court, to perform or develop the SEPs.  U.S. Oil further certifies that it has not applied for or received, and will not in the future apply for or receive: (1) credit as a Supplemental Environmental Project or other penalty offset in any other enforcement action for the project set forth in this Part; or (2) credit for any emissions reductions resulting from the projects set forth in this Part in any federal, state, regional or local emissions trading or early reduction program.  For federal income tax purposes, U.S. Oil agrees that it will neither capitalize into inventory or basis nor deduct any costs or expenditures incurred in performing SEPs.  U.S. Oil also agrees that it will clearly indicate that the projects are being or have been undertaken as part of the settlement of an enforcement action for alleged violations of the CAA and corollary state statutes in any public statements regarding the projects.

CONSENT DECREE BETWEEN PLAINTIFF - 42
UNITED STATES OF AMERICA AND
DEFENDANT U.S. OIL & REFINING CO.

United States Department of Justice
Environment & Natural Resources Division
Environmental Enforcement Section
999 18th Street, Suite 370
Denver, Colorado 80202
(303) 844-1381

76.     U.S. Oil shall include in each report required by Paragraph 77 a description of its progress toward implementing the SEPs required by Paragraph 73.  In addition, the report required by Paragraph 77 for the period in which the SEP is completed will contain the following information with respect to such project(s):

a.     A detailed description of the project as implemented;

b.     A brief description of any significant operating problems encountered, including any that had an impact on the environment, and the solutions for each problem;

c.     An itemized list of SEP expenditures attaching copies of invoices, receipts, and/or purchase orders, as appropriate;

d.     A certification that the project has been fully implemented pursuant to the provisions of this Consent Decree; and

e.     A description of the environmental and public health benefits resulting from implementation of each project (including quantification of the benefits and pollutant reductions, if feasible).

## IX. REPORTING AND RECORDKEEPING

77.     On the first February 28 or August 30 after the Date of Entry of the Consent Decree, and semi-annually on each subsequent February 28 and August 30 thereafter, U.S. Oil shall report to EPA and PSCAA as provided in this Part. Each semi-annual report shall contain the following information for the respective six month period (*i.e.,* January through June and July through December) for the Refinery:

CONSENT DECREE BETWEEN PLAINTIFF - 43
UNITED STATES OF AMERICA AND
DEFENDANT U.S. OIL & REFINING CO.

United States Department of Justice
Environment & Natural Resources Division
Environmental Enforcement Section
999 18th Street, Suite 370
Denver, Colorado  80202
(303) 844-1381

1       a.      For the period covered by the report, a summary of the emissions data for

2   the Refinery that is specifically required by the reporting requirements of the Consent Decree;

3       b.      A description of any problems anticipated with respect to meeting the

4   requirements of this Consent Decree at the Refinery;

5       c.      A description of SEP implementation activity;

6       d.      Any such additional matters as U.S. Oil believes should be brought to the

7   attention of EPA and PSCAA; and

8       e.      Any additional items required by any other Paragraph of this Consent

9

10  Decree to be submitted with a semi-annual report.

11      78.     Certification.  Each semi-annual report shall be certified by either the person

12  responsible for environmental management and compliance, or by a person responsible for

13  overseeing implementation of this Consent Decree. The certification shall state:

14      I certify under penalty of law that this information was prepared under my direction or
        supervision in accordance with a system designed to assure that qualified personnel
15      properly gather and evaluate the information submitted. Based on my directions and my
        inquiry of the person(s) who manage the system, or the person(s) directly responsible for
16      gathering the information, the information submitted is, to the best of my knowledge and
        belief, true, accurate, and complete. I am aware that there are significant penalties for
17      submitting false information, including the possibility of fine and imprisonment.

18  U.S. Oil shall retain all records required to be maintained in accordance with this Consent

19  Decree for a period of no less than five (5) years or until Termination, whichever is longer,

20  unless applicable regulations require the record to be maintained longer, in which case U.S. Oil

21  shall comply with those regulations.

22

23                          X. **CIVIL PENALTY**

24

25

CONSENT DECREE BETWEEN PLAINTIFF - 44
UNITED STATES OF AMERICA AND
DEFENDANT U.S. OIL & REFINING CO.

**United States Department of Justice**
**Environment & Natural Resources Division**
**Environmental Enforcement Section**
**999 18th Street, Suite 370**
**Denver, Colorado  80202**
**(303) 844-1381**

79.     In satisfaction of the claims asserted by the United States and PSCAA in the complaint filed in this matter, within thirty (30) days of the Date of Entry of the Consent Decree, U.S. Oil shall pay a civil penalty of $230,000.00 as follows:

(1) $115,000 to the United States and (2) $115,000 to PSCAA

80.     Payment of the civil penalty to the United States shall be made by Electronic Funds Transfer ("EFT") to the United States Department of Justice, in accordance with current EFT procedures, referencing DOJ Case Number 90-5-2-1-09514, and the civil action case name and case number of this action in the Western District of Washington.  The costs of such EFT shall be the responsibility of U.S. Oil.  Payment shall be made in accordance with instructions provided to the Company by the Financial Litigation Unit of the U.S. Attorney's Office for the Western District of Washington. Any funds received after 11:00 a.m. (Eastern Time) shall be credited on the next business day.  U.S. Oil shall provide notice of payment, referencing DOJ Case Number 90-5-2-1-09514, and the civil action case name and case number to the Department of Justice and to EPA, as provided in Paragraph 153.  Payment to PSCAA shall be made in accordance with instructions provided to the Company by PSCAA.

81.     The civil penalty set forth herein is a penalty within the meaning of Section 162(f) of the Internal Revenue Code, 26 U.S.C. § 162(f).  U.S. Oil shall not treat these penalty payments as tax deductible for purposes of federal, state, or local law.

82.     Upon the Date of Entry of the Consent Decree, the Consent Decree shall constitute an enforceable judgment for purposes of post-judgment collection in accordance with Federal Rule of Civil Procedure 69, the Federal Debt Collection Procedure Act, 28 U.S.C. §§ 3001-3308, and other applicable federal authority.  The United States and PSCAA shall be

CONSENT DECREE BETWEEN PLAINTIFF - 45
UNITED STATES OF AMERICA AND
DEFENDANT U.S. OIL & REFINING CO.

United States Department of Justice
Environment & Natural Resources Division
Environmental Enforcement Section
999 18th Street, Suite 370
Denver, Colorado  80202
(303) 844-1381

deemed judgment creditors for purposes of collecting any unpaid amounts of the civil and stipulated penalties and interest.

## XI. STIPULATED PENALTIES

83.     Stipulated penalties shall be paid to the United States for each failure by U.S. Oil to comply with the terms of this Consent Decree as provided herein.  In no event shall any stipulated penalty assessed exceed $37,500 per day for any individual violation of this Consent Decree.  Stipulated penalties shall be calculated in the amounts specified in this Part.  For those provisions where a stipulated penalty of either a fixed amount or 1.2 times the economic benefit of delayed compliance is available, the decision of which alternative to seek shall rest exclusively within the discretion of the United States.

### A. Non-Compliance with Requirements for Benzene Waste NESHAP Program

84.     For failure to comply with the requirements of Paragraph 11, per day:

| Period of Delay or Non-Compliance | Penalty per Day |
|---|---|
| 1st through 30th day after deadline | $1000 |
| 31st through 60th day after deadline | $2000 |
| Beyond 60th day after deadline | $3000 or an amount equal to 1.2 times the economic benefit of delayed compliance, whichever is greater |

85.     For failure to complete the BWON Compliance Review and Verification Reports as required by Paragraphs 12-13, and if necessary, Paragraphs 14-15: $5,000 per month.

CONSENT DECREE BETWEEN PLAINTIFF - 46
UNITED STATES OF AMERICA AND
DEFENDANT U.S. OIL & REFINING CO.

United States Department of Justice
Environment & Natural Resources Division
Environmental Enforcement Section
999 18th Street, Suite 370
Denver, Colorado  80202
(303) 844-1381

86.     For failure to submit a plan that provides for actions necessary to correct non-compliance as required by Paragraphs 16-17, or for failure to implement the actions necessary to correct non-compliance and to certify compliance as required by Paragraph 18:

| Period of Delay or Non-Compliance | Penalty per Day |
|---|---|
| 1st through 30th day after deadline | $1250 |
| 31st through 60th day after deadline | $3000 |
| Beyond 60th day after deadline | $5000 or an amount equal to 1.2 times the economic benefit of delayed compliance, whichever is greater |

87.     For failure to comply with the requirements set forth in Paragraphs 19.a-19.j for use, monitoring and replacement of carbon canisters:  $1,000 per incident of non-compliance, per day.

88.     For failure to submit or maintain any records or materials required by Paragraph 19.k of this Consent Decree: $2,000 per record or submission.

89.     For failure to establish an annual review program to identify new benzene waste streams as required by Paragraph 20: $2,500 per month.

90.     For failure to perform laboratory audits as required by Paragraph 21: $5,000 per month, per audit.

91.     For failure to implement the training requirements as set forth in Paragraphs 23-25: $5,000 per quarter.

92.     For failure to install controls on waste management units handling non-exempt, non-aqueous wastes as required by Paragraph 27: $10,000 per month per waste management unit.

CONSENT DECREE BETWEEN PLAINTIFF - 47
UNITED STATES OF AMERICA AND
DEFENDANT U.S. OIL & REFINING CO.

**United States Department of Justice**
**Environment & Natural Resources Division**
**Environmental Enforcement Section**
**999 18th Street, Suite 370**
**Denver, Colorado  80202**
**(303) 844-1381**

93.     For failure to submit any plan, report or other deliverable required by Paragraphs 29-32 or 36, or for failure to comply with the requirements of Paragraph 37: $5,000 per month.

94.     For failure to conduct sampling in accordance with the sampling plans required by Paragraphs 30-32: $250 per week, per waste stream or $15,000 per quarter, per stream, whichever is greater, but not to exceed $75,000 per quarter.

95.     For failure to submit the written report or deliverables required by Paragraph 38: $1,000 per week, per report or deliverable.

96.     If it is determined through federal, state, or local investigation that the Refinery has failed to include all benzene waste streams in its TAB calculation submitted pursuant to Part V, U.S. Oil shall pay the following, per waste stream:

| Waste Stream | Penalty |
| --- | --- |
| For waste streams < 0.05 Mg/yr | $250 |
| For waste streams between 0.05 and 0.1 Mg/yr | $1000 |
| For waste streams between 0.1 and 0.5 Mg/yr | $5000 |
| For waste streams > 0.5 Mg/yr | $10,000 |

### B. Non-Compliance with Requirements for Leak Detection and Repair Program

97.     For failure to develop an LDAR Program as required by Paragraph 43: $3,500 per week.

98.     For failure to implement the training programs specified in Paragraph 45: $10,000 per month, per program.

99.     For failure to conduct any of the audits required by Paragraphs 46-50: $5,000 per month, per audit.

United States Department of Justice
Environment & Natural Resources Division
Environmental Enforcement Section
999 18th Street, Suite 370
Denver, Colorado 80202
(303) 844-1381

100.    For failure to implement any actions necessary to correct non-compliance as required by Paragraph 51:

| Period of Delay or Non-Compliance | Penalty per Day |
|---|---|
| 1st through 30th day after deadline | $1250 |
| 31st through 60th day after deadline | $3000 |
| Beyond 60th day after deadline | $5000 or an amount equal to 1.2 times the economic benefit of delayed compliance, whichever is greater |

101.    For failure to perform monitoring utilizing the lower internal leak rate definitions as specified in Paragraphs 52-54: $100 per component, but not greater than $10,000 per month, per process unit.

102.    For failure to repair and re-monitor leaks, as required by Paragraph 56, in excess of the lower leak definitions specified in Paragraphs 52-54: $500 per component, but not greater than $10,000 per month.

103.    For failure to implement the "initial attempt" repair program in Paragraph 57: $100 per valve, but not greater than $10,000 per month.

104.    For failure to implement and comply with the LDAR monitoring program as required by Paragraphs 58-59: $100 per component, but not greater than $10,000 per month, per unit.

105.    For failure to use dataloggers or maintain electronic data as required by Paragraphs 61 and 62: $5,000 per month.

106.    For failure to implement the QA/QC procedures described in Paragraph 63: $10,000 per month.

CONSENT DECREE BETWEEN PLAINTIFF - 49
UNITED STATES OF AMERICA AND
DEFENDANT U.S. OIL & REFINING CO.

United States Department of Justice
Environment & Natural Resources Division
Environmental Enforcement Section
999 18th Street, Suite 370
Denver, Colorado  80202
(303) 844-1381

107.    For failure to designate and/or maintain an individual as accountable for LDAR performance as required in Paragraph 64 or for failure to implement the maintenance tracking program in Paragraph 65: $3,750 per week.

108.    For failure to conduct the calibration drift assessments or remonitor valves and pumps based on calibration drift assessments in Paragraph 66: $100 per missed event.

109.    For failure to comply with the requirements for repair set forth at Paragraph 68: $5,000 per valve or pump, per incident of non-compliance.

110.    For failure to comply with the requirement for chronic leakers set forth in Paragraph 69: $5,000 per valve.

111.    For failure to submit any written report or deliverable required by Paragraphs 70-71: $1,000 per week, per report.

112.    If it is determined through a federal, state, or local investigation that the Refinery has failed to include any valves or pumps in its LDAR program, U.S. Oil will pay $175 per component that it failed to include.

## C.  Failure To Implement SEPs

113.    If U.S. Oil fails to comply with the milestones in Appendix A to this Consent Decree for implementing a SEP, it shall pay stipulated penalties for each failure to meet an applicable deadline, as follows:

| Period of Delay or Non-Compliance | Penalty per Day |
|---|---|
| 1st through 30th day after deadline | $500 |
| 31st through 60th day after deadline | $1500 |
| Beyond 60th day after deadline | $3000 |

CONSENT DECREE BETWEEN PLAINTIFF - 50
UNITED STATES OF AMERICA AND
DEFENDANT U.S. OIL & REFINING CO.

United States Department of Justice
Environment & Natural Resources Division
Environmental Enforcement Section
999 18th Street, Suite 370
Denver, Colorado 80202
(303) 844-1381

114.    If U.S. Oil fails to implement a SEP, or halts or abandons work on a SEP, it shall pay a stipulated penalty of $35,432 for Project 1, $75,343 for Project 2, $40,161 for Project 3, and $368,939 for Project 4.  The penalty under this Paragraph shall accrue as of the date specified for completing the SEP or the date performance ceases, whichever is earlier.  In no event shall the stipulated penalties under Part XI C. of this Consent Decree plus the actual costs expended on the SEPs exceed the Total SEP Cost.

### D.  Non-Compliance with Requirements for Reporting and Record Keeping

115.    For each failure to submit reports as required by Part IX, per report, per day:

| Period of Delay or Non-Compliance | Penalty per Day |
| --- | --- |
| 1st through 30th day after deadline | $300 |
| 31st through 60th day after deadline | $1000 |
| Beyond 60th day after deadline | $2000 |

116.    For each failure to submit a written report (unless a more specific stipulated penalty applies), per day:

| Period of Delay or Non-Compliance | Penalty per Day |
| --- | --- |
| 1st through 30th day after deadline | $200 |
| 31st through 60th day after deadline | $500 |
| Beyond 60th day after deadline | $1000 |

### E.  Non-Compliance with Requirements for Payment of Civil Penalties

United States Department of Justice
Environment & Natural Resources Division
Environmental Enforcement Section
999 18th Street, Suite 370
Denver, Colorado  80202
(303) 844-1381

117.    For the failure to pay the civil penalties as specified in Part X of this Consent

Decree, U.S. Oil will be liable for $15,000 per day plus interest on the amount overdue at the rate

specified in 28 U.S.C. § 1961(a).

## F.  General Provisions Related to Stipulated Penalties

118.    Demand for Stipulated Penalties.  U.S. Oil will pay stipulated penalties upon

written demand by the United States or PSCAA by no later than sixty (60) days after U.S. Oil

receives such demand.  Demand from one agency will be deemed a demand from all applicable

agencies, but the agencies will consult with each other prior to making a demand.  A demand for

the payment of stipulated penalties will identify the particular violation(s) to which the stipulated

penalty relates, the stipulated penalty amount that EPA or PSCAA is demanding for each

violation, the calculation method underlying the demand, and the grounds upon which the

demand is based. After consultation with each other, the United States or PSCAA may, in their

unreviewable discretion, waive payment of any portion of stipulated penalties that may accrue

under this Consent Decree.

119.    Payment of Stipulated Penalties.  Stipulated penalties owed by U.S. Oil will be

paid 50% to the United States and 50% to PSCAA.  Stipulated penalties owing to the United

States of under $10,000 will be paid by check and made payable to "U.S. Department of Justice,"

referencing DOJ Number 90-5-2-1-09514, and delivered to the U.S. Attorney's Office in the

Western District of Washington at 700 Stewart Street, Suite 5220, Seattle, Washington, 98101-

1271.  Stipulated penalties owing to the United States of $10,000 or more and stipulated

CONSENT DECREE BETWEEN PLAINTIFF - 52
UNITED STATES OF AMERICA AND
DEFENDANT U.S. OIL & REFINING CO.

United States Department of Justice
Environment & Natural Resources Division
Environmental Enforcement Section
999 18th Street, Suite 370
Denver, Colorado  80202
(303) 844-1381

penalties owing to PSCAA will be paid in the manner set forth in Part X (Civil Penalty) of this Consent Decree.

120.    Stipulated Penalties Dispute. Stipulated penalties will begin to accrue on the day after performance is due or the day a violation occurs, whichever is applicable, and will continue to accrue until performance is satisfactorily completed or until the violation ceases. However, in the event of a dispute over stipulated penalties, stipulated penalties will not accrue commencing upon the date U.S. Oil files a petition with the Court under Part XV (Retention of Jurisdiction/Dispute Resolution) if U.S. Oil has placed the disputed amount demanded in a commercial escrow account with interest. If the dispute thereafter is resolved in U.S. Oil's favor, the escrowed amount plus accrued interest will be returned to U.S. Oil; otherwise, EPA and PSCAA will be entitled to the amount that was determined to be due by the Court, plus the interest that has accrued in the escrow account on such amount.

121.    The United States and PSCAA reserve the right to pursue any other nonmonetary remedies to which they are legally entitled, including but not limited to, injunctive relief, for U.S. Oil's violations of this Consent Decree. Where a violation of this Consent Decree is also a violation of the CAA, its regulations, or a federally-enforceable state or local law, regulation, or permit, the United States will not seek civil penalties where it already has demanded and secured stipulated penalties under this Consent Decree from U.S. Oil for the same violations nor will the United States demand stipulated penalties from U.S. Oil for a Consent Decree violation if the United States has issued a compliance order or administrative order for penalties or commenced litigation under the CAA for the same violations. Where a violation of this Consent Decree is also a violation of state law, regulation or a permit, PSCAA will not seek civil penalties where it

United States Department of Justice
Environment & Natural Resources Division
Environmental Enforcement Section
999 18th Street, Suite 370
Denver, Colorado  80202
(303) 844-1381

1 │ already has demanded and/or secured stipulated penalties under this Consent Decree from U.S.

2 │ Oil for the same violations, nor will PSCAA demand stipulated penalties from U.S. Oil for a

3 │ Consent Decree violation if PSCAA has issued a compliance order or administrative order for

4 │ penalties, or has commenced litigation under the CAA or state or local law for the same

5 │ violations.

6

7 │ **XII.   INTEREST**

8

9 │ 122.   U.S. Oil will be liable for interest on the unpaid balance of the civil penalty

10 │ specified in Part X, and for interest on any unpaid balance of stipulated penalties to be paid in

11 │ accordance with Part XI.  All such interest will accrue at the rate established pursuant to 28

12 │ U.S.C. § 1961(a) – *i.e.,* a rate equal to the coupon issue yield equivalent (as determined by the

13 │ Secretary of Treasury) of the average accepted auction price for the last auction of 52-week U.S.

14 │ Treasury bills settled prior to the Date of Lodging of the Consent Decree.  Interest will be

15 │ computed daily and compounded annually. Interest will be calculated from the date payment is

16 │ due under the Consent Decree through the date of actual payment.  For purposes of this

17 │ Paragraph, interest pursuant to this Paragraph will cease to accrue on the amount of any

18 │ stipulated penalty payment made into an interest bearing escrow account as contemplated by

19 │ Paragraph 120 of the Consent Decree.  Monies timely paid into escrow will not be considered to

20 │ be an unpaid balance under this Part.

21

22 │ **XIII.  RIGHT OF ENTRY**

23

24

25

CONSENT DECREE BETWEEN PLAINTIFF - 54
UNITED STATES OF AMERICA AND
DEFENDANT U.S. OIL & REFINING CO.

United States Department of Justice
Environment & Natural Resources Division
Environmental Enforcement Section
999 18th Street, Suite 370
Denver, Colorado  80202
(303) 844-1381

123.   Any authorized representative of EPA or PSCAA, upon presentation of credentials, will have a right of entry upon the premises of the facilities of the Refinery at any reasonable time for the purpose of monitoring compliance with the provisions of this Consent Decree, including inspecting plant equipment and systems, and inspecting all records maintained by U.S. Oil required by this Consent Decree or deemed necessary by EPA or PSCAA to verify compliance with this Consent Decree. Nothing in this Consent Decree will limit the authority of EPA to conduct tests, inspections, or other activities under any statutory or regulatory provision.

## XIV.   FORCE MAJEURE

124.   If any event occurs which causes or may cause a delay or impediment to performance in complying with any provision of this Decree, U.S. Oil shall notify the United States and PSCAA in writing as soon as practicable, but in any event within twenty (20) business Days of the date when U.S. Oil first knew of the event or should have known of the event by the exercise of due diligence ("Force Majeure Notice"). In this notice, U.S. Oil shall specifically reference this Paragraph of this Decree and describe the anticipated length of time the delay may persist, the cause or causes of the delay, and the measures taken or to be taken by U.S. Oil to prevent or minimize the delay and the schedule by which those measures shall be implemented. U.S. Oil shall take all reasonable steps to avoid or minimize such delays. The notice required by this Paragraph shall be provided in accordance with Paragraph 153 of this Consent Decree. Failure by U.S. Oil to substantially comply with this notice requirement shall render this Section voidable by the United States, as to the specific event for which U.S. Oil has failed to comply with such notice requirement, and, if voided, is of no effect as to the particular event involved.

**United States Department of Justice**
**Environment & Natural Resources Division**
**Environmental Enforcement Section**
**999 18th Street, Suite 370**
**Denver, Colorado  80202**
**(303) 844-1381**

The United States, after consultation with PSCAA, shall notify U.S. Oil in writing regarding its claim of a delay or impediment to performance within forty-five (45) Days of receipt of a Force Majeure Notice.

125.    If the United States agrees that the delay or impediment to performance has been or will be caused by circumstances beyond the control of U.S. Oil, including any entity controlled by U.S. Oil, and that U.S. Oil could not have prevented the delay by the exercise of due diligence, the Parties shall stipulate to an extension of the required deadline(s) for all requirement(s) affected by the delay by a period equivalent to the delay actually caused by such circumstances or such other period as may be appropriate under the circumstances. Such stipulation shall be filed as a modification to the Decree pursuant to the modification procedures established in this Decree. U.S. Oil shall not be liable for stipulated penalties for the period of any such delay.

126.    If the United States does not accept U.S. Oil's claim of a delay or impediment to performance, U.S. Oil must submit the matter to the Court for resolution to avoid payment of stipulated penalties, by filing a petition for determination with the Court no later than thirty (30) Days after receipt of the United States' notice provided pursuant to Paragraph 124. Once U.S. Oil has submitted this matter to the Court, the United States shall have forty-five (45) Days to file its response to the petition. If the Court determines that the delay or impediment to performance has been or will be caused by circumstances beyond the control of U.S. Oil, including any entity controlled by U.S. Oil, and that the delay could not have been prevented by U.S. Oil by the exercise of due diligence, U.S. Oil shall be excused as to that event(s) and delay (including stipulated penalties), for all requirements affected by the delay for a period of time

CONSENT DECREE BETWEEN PLAINTIFF - 56
UNITED STATES OF AMERICA AND
DEFENDANT U.S. OIL & REFINING CO.

**United States Department of Justice**
**Environment & Natural Resources Division**
**Environmental Enforcement Section**
**999 18th Street, Suite 370**
**Denver, Colorado  80202**
**(303) 844-1381**

1  equivalent to the delay caused by such circumstances or such other period as may be determined

2  by the Court.  U.S. Oil shall bear the burden of proving that any delay of any requirement(s) of

3  this Decree was caused by or will be caused by circumstances beyond its control, including any

4  entity controlled by it, and that it could not have prevented the delay by the exercise of due

5  diligence. U.S. Oil shall also bear the burden of proving the duration and extent of any delay(s)

6  attributable to such circumstances. An extension of one compliance date based on a particular

7  event may, but will not necessarily, result in an extension of a subsequent compliance date or

8  dates.

9

10     127.    Unanticipated or increased costs or expenses associated with the performance of

11  U.S. Oil's obligations under this Decree shall not constitute circumstances beyond its control, or

12  serve as the basis for an extension of time under this Section.

13     128.    Notwithstanding any other provision of this Decree, this Court shall not draw any

14  inferences nor establish any presumptions adverse to either Party as a result of U.S. Oil serving a

15  Force Majeure Notice or the Parties' inability to reach agreement.

16     129.    As part of the resolution of any matter submitted to this Court under this Section,

17  the Parties by agreement, or the Court, by order, may extend or modify the schedule for

18  completion of work under the Decree to account for the delay in the work that occurred or will

19  occur as a result of any delay or impediment to performance agreed to by the United States or

20  approved by this Court. U.S. Oil shall be liable for stipulated penalties for its failure thereafter to

21  complete the work in accordance with the extended or modified schedule.

22

23            **XV.    RETENTION OF JURISDICTION/DISPUTE RESOLUTION**

24

25

CONSENT DECREE BETWEEN PLAINTIFF - 57
UNITED STATES OF AMERICA AND
DEFENDANT U.S. OIL & REFINING CO.

**United States Department of Justice**
**Environment & Natural Resources Division**
**Environmental Enforcement Section**
**999 18th Street, Suite 370**
**Denver, Colorado  80202**
**(303) 844-1381**

130.    This Court will retain jurisdiction of this matter for the purposes of implementing and enforcing the terms and conditions of the Consent Decree and for the purpose of adjudicating all disputes between the United States, PSCAA, and U.S. Oil that may arise under the provisions of the Consent Decree, until the Consent Decree terminates in accordance with Part XVIII of this Consent Decree.

131.    The dispute resolution procedure set forth in this Part will be available to resolve any and all disputes arising under this Consent Decree, except as otherwise provided in Part XIV (Force Majeure), provided that the Party making such application has made a good faith attempt to resolve the matter with the other Party.

132.    The dispute resolution procedure required herein will be invoked upon the giving of written notice by one of the Parties to this Consent Decree to the other Parties advising the other Parties of a dispute pursuant to this Part. The notice will describe the nature of the dispute, and will state the noticing Party's position with regard to such dispute. The Parties receiving such notice will acknowledge receipt of the notice and the Parties will expeditiously schedule a meeting to discuss the dispute informally.

133.    Disputes submitted to dispute resolution will, in the first instance, be the subject of informal negotiations between the Parties. Such period of informal negotiations will not extend beyond ninety (90) calendar days from the date of the first meeting between representatives of the Parties, unless the Parties agree in writing that this period should be extended. Failure by the parties to extend the informal negotiation period in writing will not terminate the informal negotiation period provided that the parties are continuing to negotiate in good faith.

CONSENT DECREE BETWEEN PLAINTIFF - 58
UNITED STATES OF AMERICA AND
DEFENDANT U.S. OIL & REFINING CO.

United States Department of Justice
Environment & Natural Resources Division
Environmental Enforcement Section
999 18th Street, Suite 370
Denver, Colorado 80202
(303) 844-1381

134.    In the event that the Parties are unable to reach agreement during such informal negotiation period, the United States or PSCAA, as applicable, shall provide U.S. Oil with a written summary of its position regarding the dispute.  The submission of a written summary under this Paragraph shall cease informal negotiations.

135.    Under the circumstances of Paragraph 134, the position advanced by the United States and/or PSCAA will be considered binding unless, within sixty (60) calendar days of U.S. Oil's receipt of the written summary, U.S. Oil files with the Court a petition which describes the nature of the dispute.  The United States or PSCAA will respond to the petition within sixty (60) calendar days of filing.  In resolving a dispute between the parties under these circumstances, the position of the United States and PSCAA will be upheld if supported by substantial evidence in the administrative record, which may be supplemented for good cause shown.

136.    In the event that the United States and PSCAA make differing determinations or take differing actions that affect U.S. Oil's rights or obligations under this Consent Decree, the final decisions of the United States will take precedence.

137.    Where the nature of the dispute is such that a more timely resolution of the issue is required, the time periods set forth in this Part may be shortened upon motion of one of the Parties to the dispute.

138.    The Parties do not intend that the invocation of this Part by a Party cause the Court to draw any inferences nor establish any presumptions adverse to either Party as a result of invocation of this Part.

139.    As part of the resolution of any dispute submitted to dispute resolution, the Parties, by agreement, or this Court, by order, may, in appropriate circumstances, extend or

United States Department of Justice
Environment & Natural Resources Division
Environmental Enforcement Section
999 18th Street, Suite 370
Denver, Colorado  80202
(303) 844-1381

modify the schedule for completion of work under this Consent Decree to account for the delay in the work that occurred as a result of dispute resolution. U.S. Oil will be liable for stipulated penalties for its failure thereafter to complete the work in accordance with the extended or modified schedule.

## XVI.   **EFFECT OF SETTLEMENT**

140.   LDAR, Benzene Waste and Petroleum Refining NESHAP Resolution of Liability. Entry of this Consent Decree shall resolve all civil liability of U.S. Oil to the United States and PSCAA for the violations alleged in the Complaint, and in EPA's Notice of Violation issued to U.S. Oil on October 5, 2007, and all Notices of Violation issued by PSCAA to U.S. Oil that (1) commenced and ceased prior to the Date of Entry of the Consent Decree; and (2) commenced prior to the Date of Entry of the Consent Decree and continued past the Date of Entry, provided that the events giving rise to the Benzene Waste NESHAP and LDAR violations are identified and addressed by U.S. Oil as required under Paragraphs 12-16 for Benzene Waste NESHAP requirements and under Paragraphs 46 and 51 for LDAR requirements; provided, however, that U.S. Oil will receive no release of liability for LDAR violations that were not identified in Initial Compliance Audits, as set forth in Paragraph 47.

141.   Reservation of Rights. Notwithstanding the resolution of liability in Paragraph 142, nothing in this Consent Decree precludes the United States and/or PSCAA from seeking from U.S. Oil injunctive and/or other equitable relief or civil penalties for violations by U.S. Oil of Benzene Waste and Petroleum Refining NESHAP and/or LDAR requirements that (A) commenced prior to the Date of Entry of this Consent Decree and continued after the Date of

**United States Department of Justice**
**Environment & Natural Resources Division**
**Environmental Enforcement Section**
**999 18th Street, Suite 370**
**Denver, Colorado  80202**
**(303) 844-1381**

1   Entry if U.S. Oil fails to identify and address such violations as required by Paragraphs 12-16,

2   and Paragraph 51; or (B) commenced after the Date of Entry of the Consent Decree.

3       142.   Audit Policy.  Nothing in this Consent Decree is intended to limit or disqualify

4   U.S. Oil, on the grounds that information was not discovered and supplied voluntarily, from

5   seeking to apply EPA's Audit Policy or any state or local audit policy to any violations or non-

6   compliance that U.S. Oil discovers during the course of any investigation, audit, or enhanced

7   monitoring U.S. Oil is required to undertake pursuant to this Consent Decree.

8       143.   Claim/Issue Preclusion.  In any subsequent administrative or judicial proceeding

9   initiated by the United States or PSCAA for injunctive relief, penalties, or other appropriate

10  relief relating to the Refinery for violations of the NESHAP and/or LDAR requirements not

11  identified in Part XVI (Effect of Settlement) of the Consent Decree and/or the Complaint:

12

13          a.     U.S. Oil shall not assert, and may not maintain, any defense or claim

14  based upon the principles of waiver, res judicata, collateral estoppel, issue preclusion, or claim-

15  splitting.  Nor may U.S. Oil assert, or maintain, any other defenses based upon any contention

16  that the claims raised by the United States or PSCAA in the subsequent proceeding were or

17  should have been brought in the instant case.  Nothing in the preceding sentences is intended to

18  affect the ability of U.S. Oil to assert that the claims are deemed resolved by virtue of this Part of

19  the Consent Decree.

20          b.     Except as set forth in Paragraph 143.a, above, the United States and

21  PSCAA may not assert or maintain that this Consent Decree constitutes a waiver or

22  determination of, or otherwise obviates, any claim or defense whatsoever, or that this Consent

23

24

25

CONSENT DECREE BETWEEN PLAINTIFF - 61
UNITED STATES OF AMERICA AND
DEFENDANT U.S. OIL & REFINING CO.

United States Department of Justice
Environment & Natural Resources Division
Environmental Enforcement Section
999 18th Street, Suite 370
Denver, Colorado 80202
(303) 844-1381

1  Decree constitutes acceptance by U.S. Oil of any interpretation or guidance issued by EPA

2  related to the matters addressed in this Consent Decree.

3      144.   Imminent and Substantial Endangerment.  Nothing in this Consent Decree shall

4  be construed to limit the authority of the United States and PSCAA to undertake any action

5  against any person to abate or correct conditions which may present an imminent and substantial

6  endangerment to the public health, welfare, or the environment.

7

8                    XVII.  GENERAL PROVISIONS

9

10     145.   Other Laws.  Except as specifically provided by this Consent Decree, nothing in

11  this Consent Decree will relieve U.S. Oil of its obligation to comply with all applicable federal,

12  state and local laws and regulations, including but not limited to more stringent standards.  In

13  addition, nothing in this Consent Decree will be construed to prohibit or prevent the United

14  States or PSCAA from developing, implementing, and enforcing more stringent standards

15  subsequent to the Date of Lodging of this Consent Decree through rulemaking, the permit

16  process, or as otherwise authorized or required under federal, state or local laws and regulations.

17  Subject to Part XVI (Effect of Settlement), Part XI (Stipulated Penalties), and Paragraph 146

18  (Permit Violations) of this Consent Decree, nothing contained in this Consent Decree will be

19  construed to prevent or limit the rights of the United States or PSCAA to seek or obtain other

20  remedies or sanctions available under other federal, state or local statutes or regulations, by

21  virtue of U.S. Oil's violation of the Consent Decree or of the statutes and regulations upon which

22  the Consent Decree is based, or for U.S. Oil's violations of any applicable provision of law.  This

23  will include the right of the United States or PSCAA to invoke the authority of the Court to order

24

25

CONSENT DECREE BETWEEN PLAINTIFF - 62
UNITED STATES OF AMERICA AND
DEFENDANT U.S. OIL & REFINING CO.

United States Department of Justice
Environment & Natural Resources Division
Environmental Enforcement Section
999 18th Street, Suite 370
Denver, Colorado  80202
(303) 844-1381

1    U.S. Oil's compliance with this Consent Decree in a subsequent contempt action. The

2    requirements of this Consent Decree do not exempt U.S. Oil from complying with any and all

3    new or modified federal, state, regional and/or local statutory or regulatory requirements that

4    may require technology, equipment, monitoring, or other upgrades after the Date of Lodging of

5    this Consent Decree.

6        146.    Permit Violations. Except as provided in Paragraph 121, nothing in this Consent

7    Decree will be construed to prevent or limit the right of the United States or PSCAA to seek

8    injunctive or monetary relief for violations of permits; provided, however, that with respect to

9    monetary relief, the United States and PSCAA must elect between filing a new action for such

10   monetary relief or seeking stipulated penalties under this Consent Decree, if stipulated penalties

11   also are available for the alleged violation(s).

12

13       147.    Reports Not Subject to PSCAA Electronic Reporting. No report, notice or

14   submission to PSCAA under this Consent Decree shall be a "compliance report" under PSCAA

15   Regulation 1, § 7.09(c).

16       148.    Failure of Compliance. The United States and PSCAA do not, by their consent to

17   the entry of this Consent Decree, warrant or aver in any manner that U.S. Oil's complete

18   compliance with the Consent Decree will result in compliance with the provisions of the CAA or

19   the corollary state and local statutes. Notwithstanding the review or approval by EPA or PSCAA

20   of any plans, reports, policies or procedures formulated pursuant to the Consent Decree, U.S. Oil

21   will remain solely responsible for compliance with the terms of the Consent Decree, all

22   applicable permits, and all applicable federal, state and local laws and regulations, except as

23   provided in Part XIV (Force Majeure).

24

25

**United States Department of Justice**
**Environment & Natural Resources Division**
**Environmental Enforcement Section**
**999 18th Street, Suite 370**
**Denver, Colorado  80202**
**(303) 844-1381**

149.   <u>Service of Process</u>. U.S. Oil hereby agrees to accept service of process by certified or registered mail return receipt requested with respect to all matters arising under or relating to the Consent Decree and to waive the formal service requirements set forth in Rule 4 of the Federal Rules of Civil Procedure and any applicable local rules of this Court, including but not limited to, service of a summons. The persons identified by U.S. Oil at Paragraph 153 are authorized to accept service of process with respect to all matters arising under or relating to the Consent Decree.

150.   <u>Costs</u>. Each Party to this action will bear its own costs and attorneys' fees.

151.   <u>Public Documents</u>. All information and documents submitted by U.S. Oil to EPA and PSCAA pursuant to this Consent Decree will be subject to public inspection in accordance with the respective statutes and regulations that are applicable to EPA and PSCAA, unless subject to legal privileges or protection or identified and supported as trade secrets or business confidential in accordance with the respective state or federal statutes or regulations.

152.   <u>Public Notice and Comment</u>. The Parties agree to the Consent Decree and agree that the Consent Decree may be entered upon compliance with the public notice procedures set forth at 28 C.F.R. § 50.7, and upon notice to this Court from the United States Department of Justice requesting entry of the Consent Decree. The United States and PSCAA reserve the right to withdraw or withhold its consent to the Consent Decree if public comments disclose facts or considerations indicating that the Consent Decree is inappropriate, improper, or inadequate.

153.   <u>Notice</u>. Unless otherwise provided herein, notifications to or communications between the Parties will be deemed submitted on the date they are postmarked and sent by U.S. Mail, postage pre-paid for certified or registered mail return receipt requested, or by equivalent

CONSENT DECREE BETWEEN PLAINTIFF - 64
UNITED STATES OF AMERICA AND
DEFENDANT U.S. OIL & REFINING CO.

**United States Department of Justice**
**Environment & Natural Resources Division**
**Environmental Enforcement Section**
**999 18th Street, Suite 370**
**Denver, Colorado 80202**
**(303) 844-1381**

1    private service with tracking and confirmation of delivery.  Each report, study, notification or

2    other communication of U.S. Oil will be submitted as specified in this Consent Decree.  If the

3    date for submission of a report, study, notification or other communication falls on a Saturday,

4    Sunday or legal holiday, the report, study, notification or other communication will be deemed

5    timely if it is submitted the next business day.  Except as otherwise provided herein, all reports,

6    notifications, certifications, or other communications required or allowed under this Consent

7    Decree to be submitted or delivered to the United States, EPA, PSCAA, and U.S. Oil will be

8    addressed as follows:

9

10       **As to the United States:**

11       Chief, Environmental Enforcement Section
         Environment and Natural Resources Division
12       U.S. Department of Justice
         P.O. Box 7611, Ben Franklin Station
13       Washington, DC 20044-7611

14       **As to EPA:**

15       Director, Office of Compliance and Enforcement
         U.S. Environmental Protection Agency
16       Mail Stop OCE-164
         1200 6th Avenue, Suite 900
17       Seattle, WA  98101

18       And an electronic copy to:

19       keenan.john@epa.gov

20       **As to PSCAA:**

21
         Laurie Halverson
22       Director, Compliance & Legal
         Puget Sound Clean Air Agency
23       1904 Third Avenue, Suite 106
         Seattle, WA  98101

24

25

CONSENT DECREE BETWEEN PLAINTIFF - 65
UNITED STATES OF AMERICA AND
DEFENDANT U.S. OIL & REFINING CO.

**United States Department of Justice**
**Environment & Natural Resources Division**
**Environmental Enforcement Section**
**999 18th Street, Suite 370**
**Denver, Colorado  80202**
**(303) 844-1381**

**As to the Refinery:**

Alan J. Cabodi
Vice-President, Manufacturing
U.S. Oil & Refining Co.
3001 Marshall Ave.
Tacoma, WA 98421

And an electronic copy to:

tjg@usor.com

Any Party may change either the notice recipient or the address for providing notices to it by serving all other Parties with a notice setting forth such new notice recipient or address. In addition, the nature and frequency of reports required by the Consent Decree may be modified by mutual consent of the Parties. The consent of the United States to such modification must be in the form of a written notification from EPA, but need not be filed with the Court to be effective.

154.   Approvals.  Except as otherwise specifically provided in this Consent Decree, all EPA approvals will be made in writing.

155.   Opportunity for Comment by PSCAA.  For all provisions of Part V and VI where EPA approval is required, PSCAA is entitled to provide comments to EPA and to consult with EPA regarding the issue in question.

156.   Paperwork Reduction Act.  The information required to be maintained or submitted pursuant to this Consent Decree is not subject to the Paperwork Reduction Act of 1980, 44 U.S.C. §§ 3501 et seq.

157.   Modification.  This Consent Decree contains the entire agreement of the Parties and will not be modified by any prior oral or written agreement, representation or understanding. Prior drafts of the Consent Decree will not be used in any action involving the interpretation or

CONSENT DECREE BETWEEN PLAINTIFF - 66
UNITED STATES OF AMERICA AND
DEFENDANT U.S. OIL & REFINING CO.

United States Department of Justice
Environment & Natural Resources Division
Environmental Enforcement Section
999 18th Street, Suite 370
Denver, Colorado 80202
(303) 844-1381

enforcement of the Consent Decree.  Non-material modifications to this Consent Decree will be effective when signed in writing by EPA, PSCAA and U.S. Oil.  The United States will file non-material modifications with the Court on a periodic basis.  For purposes of this Paragraph, non-material modifications include but are not limited to modifications to the frequency of reporting provided that such changes are agreed upon in writing between EPA, PSCAA and U.S. Oil.  Material modifications to this Consent Decree will be in writing, signed by EPA, PSCAA, and U.S. Oil, and will be effective upon approval by the Court.

158.   Effect of Shutdown.  If there is a permanent shutdown of the Refinery, the surrender of all air permits for the Refinery will be deemed to satisfy all requirements of this Consent Decree applicable to the Refinery on and after the later of: (i) the date of the shutdown of the Refinery; or (ii) the date of the surrender of all permits.  If there is a permanent shutdown of a process unit at the Refinery, U.S. Oil may use the process for Certification of Completion in Part XVIII (Termination) that the process unit is permanently shutdown which shall be deemed to satisfy all requirements of this Consent Decree applicable to that process unit.

## XVIII. TERMINATION

159.   Certification of Completion: Applicable Parts.  Prior to moving for termination under Paragraph 164, U.S. Oil may seek to certify completion of one or more of the following Parts of the Consent Decree applicable to the Refinery:

a.       Part V (Benzene);

b.       Part VI (LDAR); and

c.       Part VIII (Supplemental Environmental Projects).

CONSENT DECREE BETWEEN PLAINTIFF - 67
UNITED STATES OF AMERICA AND
DEFENDANT U.S. OIL & REFINING CO.

United States Department of Justice
Environment & Natural Resources Division
Environmental Enforcement Section
999 18th Street, Suite 370
Denver, Colorado  80202
(303) 844-1381

160.   Certification of Completion: U.S. Oil Actions.  If U.S. Oil concludes that any of the Parts of the Consent Decree identified in Paragraph 159 have been completed, U.S. Oil may submit a written report to EPA and PSCAA describing the activities undertaken and certifying that the applicable Part(s) have been completed in full satisfaction of the requirements of this Consent Decree, and that U.S. Oil is in substantial and material compliance with all of the other requirements of the Consent Decree.  The report will contain the following statement, signed by a responsible corporate official of U.S. Oil:

> To the best of my knowledge, after appropriate investigation, I certify that the information contained in or accompanying this submission is true, accurate and complete. I am aware that there are significant penalties for submitting false information, including the possibility of fine and imprisonment for knowing violations.

161.   Certification of Completion: EPA Actions. Upon receipt of U.S. Oil's certification and after opportunity for comment by PSCAA, EPA will notify U.S. Oil whether the requirements set forth in the applicable Part have been completed in accordance with this Consent Decree:

a.   If EPA concludes that the requirements have not been fully complied with, EPA will notify U.S. Oil as to the activities that must be undertaken to complete the applicable Part of the Consent Decree.  U.S. Oil will perform all activities described in the notice, subject to its right to invoke the dispute resolution procedures set forth in Part XV (Retention of Jurisdiction/Dispute Resolution); and/or

b.   If EPA concludes that the requirements of the applicable Part have been completed in accordance with this Consent Decree, EPA will so certify in writing to U.S. Oil. This certification will constitute the certification of completion of the applicable Part for

United States Department of Justice
Environment & Natural Resources Division
Environmental Enforcement Section
999 18th Street, Suite 370
Denver, Colorado 80202
(303) 844-1381

purposes of this Consent Decree.  The Parties recognize that ongoing obligations under such Part remain and necessarily continue (*e.g.*, reporting, recordkeeping, training, auditing requirements), and that U.S. Oil's certification is that it is in current compliance with all such obligations.

162.    Certification of Completion:  No Impediment to Stipulated Penalty Demand. Nothing in Paragraphs 160 and 161 will preclude the United States or PSCAA from seeking stipulated penalties for a violation of any of the requirements of the Consent Decree regardless of whether a Certification of Completion has been issued under Paragraph 161.b of the Consent Decree.  In addition, nothing in this Paragraph will permit U.S. Oil to fail to implement any ongoing obligations under the Consent Decree regardless of whether a Certification of Completion has been issued.

163.    Termination:  Conditions Precedent.  This Consent Decree will be subject to termination upon motion by the Parties or upon motion by U.S. Oil acting alone under the conditions identified in this Paragraph.  Prior to seeking termination, U.S. Oil must have completed and satisfied all of the following requirements of this Consent Decree:

a.    Installation of control technology systems as specified in this Consent Decree;

b.    Compliance with all provisions contained in this Consent Decree, such compliance may be established for specific parts of the Consent Decree in accordance with Paragraphs 159-162;

c.    Payment of all penalties and other monetary obligations due under the terms of the Consent Decree; unless all penalties and/or other monetary obligations owed to the United States or PSCAA are fully paid as of the time of the Motion;

CONSENT DECREE BETWEEN PLAINTIFF - 69
UNITED STATES OF AMERICA AND
DEFENDANT U.S. OIL & REFINING CO.

United States Department of Justice
Environment & Natural Resources Division
Environmental Enforcement Section
999 18th Street, Suite 370
Denver, Colorado  80202
(303) 844-1381

1        d.    Completion of the Supplemental Environmental Projects under Part VIII;

2    and

3        e.    Implementation of the BWON and LDAR Program Requirements

4    described in Parts V and VI of this Consent Decree for a period of at least six (6) years from the

5    Date of Entry of this Decree.

6        164.    <u>Termination Procedure</u>.  At such time as U.S. Oil believes that it has satisfied the

7    requirements for termination set forth in Paragraph 163, U.S. Oil will certify such compliance

8    and completion to the United States and PSCAA in accordance with the certification language of

9    Paragraph 160.  Unless the United States or PSCAA object in writing with specific reasons

10   within one-hundred twenty (120) days of receipt of U.S. Oil's certification under this Paragraph,

11   the Court may upon motion by U.S. Oil order that this Consent Decree be terminated.  If the

12   United States or PSCAA object to the certification by U.S. Oil, then the matter will be submitted

13   to the Court for resolution under Part XV (Retention of Jurisdiction/Dispute Resolution).  In such

14   case, U.S. Oil will bear the burden of proving that this Consent Decree should be terminated.

15

16                              **XIX.   <u>SIGNATORIES</u>**

17

18       165.    Each of the undersigned representatives certifies that they are fully authorized to

19   enter into the Consent Decree on behalf of such Parties, and to execute and to bind such Parties

20   to the Consent Decree.

21

22

23

24

25

CONSENT DECREE BETWEEN PLAINTIFF - 70
UNITED STATES OF AMERICA AND
DEFENDANT U.S. OIL & REFINING CO.

**United States Department of Justice**
**Environment & Natural Resources Division**
**Environmental Enforcement Section**
**999 18th Street, Suite 370**
**Denver, Colorado  80202**
**(303) 844-1381**

Dated and entered this _____ day of _____, 2011

_____
UNITED STATES DISTRICT JUDGE

United States Department of Justice
Environment & Natural Resources Division
Environmental Enforcement Section
999 18th Street, Suite 370
Denver, Colorado  80202
(303) 844-1381

THE UNDERSIGNED PARTY enters into this Consent Decree in the matter of *United States, et al. v. U.S. Oil & Refining Co.*, subject to the public notice and comment requirements of 28 C.F.R. § 50.7

FOR PLAINTIFF THE UNITED STATES OF AMERICA:

DATE

W. BENJAMIN FISHEROW
Deputy Section Chief
Environment and Natural Resources Division
United States Department of Justice

12 | 09 | 10
DATE

DAVID F. ASKMAN
Environmental Enforcement Section
Environment and Natural Resources Division
United States Department of Justice

12 | 09 | 10
DATE

BRIAN C. KIPNIS
Assistant United States Attorney
Western District of Washington

CONSENT DECREE BETWEEN PLAINTIFF - 72
UNITED STATES OF AMERICA AND
DEFENDANT U.S. OIL &REFINING CO.

United States Department of Justice
Environment & Natural Resources Division
Environmental Enforcement Section
999 18th Street, Suite 370
Denver, Colorado  80202
(303) 844-1381

THE UNDERSIGNED PARTY enters into this Consent Decree in the matter of *United States, et al. v. U.S. Oil & Refining Co.*, subject to the public notice and comment requirements of 28 C.F.R. § 50.7

FOR PLAINTIFF THE UNITED STATES
ENVIRONMENTAL PROTECTION AGENCY:

12.7.10
_____
DATE

_____

ALLYN L. STERN
Regional Counsel
U.S. Environmental Protection Agency Region 10

CONSENT DECREE BETWEEN PLAINTIFF - 73
UNITED STATES OF AMERICA AND
DEFENDANT U.S. OIL & REFINING CO.

United States Department of Justice
Environment & Natural Resources Division
Environmental Enforcement Section
999 18th Street, Suite 370
Denver, Colorado  80202
(303) 844-1381

1   THE UNDERSIGNED PARTY enters into this Consent Decree in the matter of *United States, et
2   al. v. U.S. Oil & Refining Co.*, subject to the public notice and comment requirements of 28
    C.F.R. § 50.7

3

4

5                                      FOR CO-PLAINTIFF THE PUGET SOUND
6                                      CLEAN AIR AGENCY:

7

8   _12.7.2010_                        _Craig Kenworthy_
9   DATE

10                                     CRAIG KENWORTHY
                                       Executive Director
11                                     Puget Sound Clean Air Agency

12

13

14

15

16  _12/8/10_                          _Laurie Halvorson_
    DATE
17
                                       LAURIE HALVORSON
18                                     Director - Compliance and Legal
                                       Puget Sound Clean Air Agency

19

20

21

22

23

24

25

CONSENT DECREE BETWEEN PLAINTIFF - 74
UNITED STATES OF AMERICA AND
DEFENDANT U.S. OIL & REFINING CO.

**United States Department of Justice**
**Environment & Natural Resources Division**
**Environmental Enforcement Section**
**999 18th Street, Suite 370**
**Denver, Colorado 80202**
**(303) 844-1381**

1   THE UNDERSIGNED PARTY enters into this Consent Decree in the matter of *United States, et*
2   *al. v. U.S. Oil & Refining Co.,* subject to the public notice and comment requirements of 28
    C.F.R. § 50.7

3

4

5                                    FOR DEFENDANT U.S. OIL & REFINING CO.:

6

7

8   __12/8/2010__            _____
    DATE
9                            ALAN J. CABODI
                             Vice-President, Manufacturing
10                           U.S. Oil & Refining Co.
                             3001 Marshall Ave.
11                           Tacoma, WA  98421

12

13

14

15

16

17

18

19

20

21

22

23

24

25

    CONSENT DECREE BETWEEN PLAINTIFF - 75          United States Department of Justice
    UNITED STATES OF AMERICA AND               Environment & Natural Resources Division
    DEFENDANT U.S. OIL & REFINING CO.             Environmental Enforcement Section
                                                       999 18th Street, Suite 370
                                                       Denver, Colorado  80202
                                                          (303) 844-1381

## Appendix A – Supplemental Environmental Projects

**Projects:** U.S. Oil shall spend no less than $746,000 and complete the following four (4) Supplemental Environmental Projects (SEPs or Projects):

1.    Relief Valves to Flare #1

     a.  U.S. Oil shall reroute any vapors from atmospheric pressure relief valves currently located on the C-1 (crude prefractionator) and C-7 (naphtha jet splitter) towers to flare #1 by no later than December 31, 2010.

     b.  Initiation of the project was necessary to align installation with the turnaround scheduled for September/October 2010.  Therefore this SEP began prior to Date of Lodging and U.S. Oil has already incurred expenditures on this SEP which will be credited.

2.    MC Loading Rack Mist Eliminator

     a.  U.S. Oil shall install a mist eliminator system (and associated support structure) to control asphalt vapors (particulate matter) during loading operations at the MC loading rack no later than 12 months from Date of Entry of the Consent Decree.  This system shall be designed to be at least 99% efficient.

     b.  U.S. Oil shall operate the system at all times that the loading rack is in use between the date of installation and July 1, 2016.

3.    Flux Loading Rack Mist Eliminator

     a.  U.S. Oil shall replace the mist eliminator system to control asphalt vapors (particulate matter) during loading operations at the flux loading rack with a system designed to be at least 99% efficient no later than 12 months from Date of Entry of the Consent Decree.

     b.  U.S. Oil shall operate the system at all times that the loading rack is in use between the date of installation and July 1, 2016.

**United States Department of Justice**
**Environment & Natural Resources Division**
**Environmental Enforcement Section**
**999 18th Street, Suite 370**
**Denver, Colorado  80202**
**(303) 844-1381**

4.   Valve Upgrade Project

a.   U.S. Oil shall replace or repack at least 170 valves with live-load or enhanced packing technology by no later than December 31, 2010.

b.   U.S. Oil may replace or repack additional valves with live-load or enhanced packing technology as part of this SEP by no later than June 30, 2013.

c.    Initiation of the project was necessary to align installation with the turnaround scheduled for September/October 2010.  Therefore this SEP began prior to Date of Lodging and U.S. Oil has already incurred expenditures on this SEP which will be credited.

CONSENT DECREE BETWEEN PLAINTIFF - 77
UNITED STATES OF AMERICA AND
DEFENDANT U.S. OIL &REFINING CO.

United States Department of Justice
Environment & Natural Resources Division
Environmental Enforcement Section
999 18th Street, Suite 370
Denver, Colorado  80202
(303) 844-1381